136 N.J. Super. 114 (1975)
344 A.2d 785
MILLICENT H. FENWICK, DIRECTOR OF THE NEW JERSEY DIVISION OF CONSUMER AFFAIRS, COMPLAINANT-RESPONDENT,
v.
KAY AMERICAN JEEP, INC., RESPONDENT, AND JOSEPH FRIEDMAN, T/A FRIEDMAN ASSOCIATES, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 4, 1975.
Decided September 5, 1975.
*115 Before Judges KOLOVSKY, LYNCH and ALLCORN.
Mr. Donald T. Okner argued the cause for the appellant (Messrs. Margolis & Bergstein, attorneys).
Mr. Douglas J. Harper, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
The opinion of the court was delivered by ALLCORN, J.A.D.
In July 1973, under the authority delegated to him to "promulgate such rules and regulations * * * as may be necessary" to "accomplish the objectives and to carry out the duties prescribed" by the Consumers Fraud Act, N.J.S.A. 56:8-1 et seq., the Attorney General adopted a set of rules "concerning motor vehicle advertising practices." 5 N.J.R. 152 (2), 5 N.J.R. 290 (b); N.J.A.C. 13:45A-2.2. Among the motor vehicle advertising practices declared to be "unlawful" by those rules was the following (N.J.A.C. 13:45A-2.2(a) (2):
ii. The failure in any price advertisement to disclose * * *:

* * *
(4) The bona fide odometer reading of any specifically advertised * * * used car. * * * *116 So far as here pertinent, a "price advertisement" is defined as "any advertisement [of a motor vehicle] in which a specified price is stated". N.J.A.C. 13:45A-2.1.
Appellant Joseph Friedman owns and operates an advertising agency under the firm name Friedman Associates. Among his clientele during the period critical to this proceeding were some 30 to 35 separate retail automobile dealers, for whom he prepared and delivered to local newspapers for publication advertisements numbering an estimated "100 individual ads per day". The essential factual details to be included in the advertisements were supplied to Friedman Associates by the respective automobile dealers, from which the advertisements would be prepared by a member of the Friedman staff and then delivered by the latter to the newspaper for publication.
On December 14, 1973, there was published in the Newark Star Ledger, under the name of Kay American Jeep, an advertisement offering for sale a used motor vehicle for a stated price. The advertisement, concededly prepared by Friedman Associates on behalf of Kay, did not set forth the odometer reading of the advertised vehicle. As a result the Division of Consumer Affairs issued its complaint and notice of hearing to Kay American Jeep, charging a violation of N.J.A.C. 13:45A-2.2(a) (2) (ii) (4) in failing "to disclose the BONA FIDE Odometer reading of any specifically advertised * * * used motor vehicle" in "a price advertisement".
At the hearing held March 13, 1974 Mr. Friedman appeared in company with a representative of Kay American Jeep, both without counsel. After consenting to the joinder of himself as a party respondent to the proceedings, Friedman admitted to the hearing officer that the offending advertisement had been prepared by Friedman Associates; that the odometer reading of the advertised vehicle had in fact been furnished to Friedman Associates by Kay, and that the omission of the odometer reading from the advertisement *117 was due entirely to the oversight of Friedman Associates. The representative of Kay corroborated Friedman. No other witnesses were called by either side.
At the conclusion of the hearing the hearing officer found both Kay American Jeep and Mr. Friedman "guilty of violating the rule [regulation]", and by order of March 15, 1974 assessed a fine of $150 and $50 costs against them jointly and severally, and directed that each "thereafter cease and desist from failing to disclose in any price advertisement for a used motor vehicle * * * the bona fide odometer reading of said motor vehicle". The present appeal from that order has been taken by respondent Joseph Friedman.
It is the contention of the respondent Friedman that there can be no violation of the act or the implementing regulations in the absence of intent, and inasmuch as it is uncontroverted that the omission of the odometer reading was inadvertent, the finding and order of the Division must be reversed. The Division takes the position that the language of the act, as well as the policy underlying it, make manifest a legislative purpose to prohibit the proscribed conduct and impose liability without regard to intent.
Manifestly, the design of the Consumer Fraud Act is to protect the consumer against imposition and loss as a result of fraud and fraudulent practices by persons engaged in the sale of goods and services. Kugler v. Romain, 58 N.J. 522 (1971). The pertinent portion of the controlling section of that act is found in N.J.S.A. 56:8-2, and provides:
The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or with the subsequent performance of such person as aforesaid, whether or not any preson has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; * * *
*118 In the context of this language it is plain that, however the fraud or fraudulent conduct may be designated or characterized, if it consists of or rests upon "concealment, suppression, or omission of any material fact", the nondisclosure must be "knowing * * * [and] with intent that others rely" thereon. Ibid. As a consequence, the nondisclosure of a material fact unknowingly and by reason of inadvertence does not constitute an unlawful practice under the Act.
Notwithstanding this clear expression of legislative intent the dissent suggests that, by virtue of the authority delegated to the Attorney General to promulgate regulations, he may declare the unknowing and inadvertent nondisclosure of a material fact to constitute an "unconscionable commercial practice." The argument overlooks (and does not touch upon) the fact that such an interpretation would nullify absolutely and render completely meaningless the clause of the statute relating to fraud and fraudulent conduct arising out of the "knowing, concealment, suppression, or omission of any material fact." The phrase "unconscionable commercial practice" has no special properties. In consumer goods transactions "unconscionability must be equated with the concepts of deception, fraud, false pretense, misrepresentation, concealment and the like * * * stamped unlawful under N.J.S.A. 56:8-2." Kugler v. Romain, supra at 544.
The legislative history of the Consumer Fraud Act supplies further evidence of the intent of the Legislature. As originally introduced, the portion of the section with which we are here concerned provided (Senate Bill No. 199, § 2):
The act, use or employment of any deception, fraud, false pretense, misrepresentation, concealment, suppression, or omission of any material fact by any person in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; * * *.
*119 Significantly, the concealment, suppression or omission of any material fact was constituted an unlawful practice without regard to knowledge or intent.
On passage in the Senate, however, the bill was amended in several respects, including the qualifications that the concealment, suppression or omission of any material fact had to be knowing and with intent that others rely thereon, in order to constitute an unlawful practice. As amended the pertinent portion read as follows (Senate Committee Amendments to Senate No. 199  the added language being underlined, the deleted language being bracketed):
The act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, or the knowing concealment, suppression, or omission of any material fact [by any person] with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; * * *.
The critical significance of the amendments needs no elaboration; it is manifestly self-evident.
However broad the authority of the Attorney General to "promulgate such rules and regulations * * * as may be necessary" to effectuate the purpose and policy of the act, N.J.S.A. 56:8-4, it does not extend to or authorize the promulgation of any regulation that would nullify and run counter to the express language and specific limitations of the statute from which that authority stems.
Cases such as Dept. of Health v. Concrete Specialties, Inc., 112 N.J. Super. 407 (App. Div. 1970), and Grant Lunch Corp. v. Driscoll, 129 N.J.L. 408 (Sup. Ct. 1943), aff'd o.b. 130 N.J.L. 554 (E. & A. 1943), cert. den. 320 U.S. 801, 64 S.Ct. 431, 88 L.Ed. 4814 (1944), involving violations of air pollution control regulations and alcoholic beverage regulations dealing with sales to minors, respectively, are not here apposite. In neither instance did the underlying statutory authority expressly require that the proscribed conduct be "knowing" and intentional, as here. N.J.S.A. 26:2C-1 *120 et seq.; N.J.S.A. 33:1-1 et seq. Likewise the cases of State v. Elmwood Terrace, Inc., 85 N.J. Super. 240 (App. Div. 1964), and State v. Kinsley, 103 N.J. Super. 190 (Cty. Ct. 1968), aff'd 105 N.J. Super. 347 (App. Div. 1969), involving, respectively, violation of an ordinance requiring dwellings to be heated to a minimum temperature and violation of a water pollution statute  knowledge and intent were not specific prerequisites as in the statute here under review. See, generally, State v. Savoie, 67 N.J. 439 (1975).
This disposition of the appeal makes it unnecessary to consider and to pass upon the other grounds urged for reversal.
Accordingly, so much of the order of the Division of Consumer Affairs as finds the respondent Joseph Friedman, individually and trading as Friedman Associates, to have violated N.J.A.C. 13:45A-2.2 (a) (2) (ii) (4), assesses a penalty of $150 and costs of $50 against him, and directs that he "thereafter cease and desist" from the same conduct, is reversed, and the cause is remanded to the Division of Consumer Affairs with directions to dismiss the complaint as against respondent Joseph Friedman.
KOLOVSKY, P.J.A.D. (dissenting).
Separate complaints filed in the Division of Consumer Affairs (Division) charged two automobile dealers, Kay American Jeep, Inc. and Arrel Datsun, respectively, with having violated a regulation which makes it an unlawful motor vehicle advertising practice to fail to include in an advertisement for sale of a used automobile the bona fide odometer reading of the automobile. See N.J.A.C. 13:45A-2.2 (a) (ii) (4). Each complaint sought assessment of a penalty of $200, entry of a cease and desist order and costs.
Appellant Friedman conducts the advertising agency which had prepared the copy and placed the advertisements in a newspaper on behalf of each of the dealers. In each case he appeared with the dealer at the scheduled hearing and consented to being added as a party defendant to the complaint.
*121 That the odometer reading had been omitted from the advertisements was conceded. The defense offered was that the omission was not intentional but rather resulted from the negligence of someone in appellant's office, in one case appellant himself.
The Division rejected the proffered defense. An order was entered in each case finding that the charged violation had been proven and ordering that the respective dealers and appellant Friedman "jointly and severally and in the alternative" pay a penalty of $150 and $50 costs and cease and desist from violating the regulation in the future.
Friedman, but not the dealers, filed a notice of appeal in each case. Since each appeal and the majority opinions therein involve identical issues, this dissenting opinion will apply to both appeals.
The majority concludes that a violation of the cited regulation cannot be established unless it be shown that the failure to include the odometer reading was deliberate rather than due to inadvertence or negligence.
I disagree.
"The subject of consumer fraud has emerged as a major problem of our commercial scene. Being unequal to the vendor, the consumer is easily overreached." Riley v. New Rapids Carpet Center, 61 N.J. 218, 224 (1972). To remedy and alleviate that problem, our Legislature adopted statutes whose purpose is to protect the consumer against deceptive and improper practices.
Among them was L. 1960, c. 39  "An Act concerning consumer fraud, its prevention, and providing penalties therefor" (hereafter the Consumer Fraud Act). The act, now N.J.S.A. 56:8-1 et seq., has been amended over the years to expand the protection afforded the consumer. Concomitantly, the governmental machinery provided for enforcement and regulation has been upgraded and expanded.[1]
*122 Power to promulgate rules and regulations "to accomplish the objectives and to carry out the duties prescribed by [the Consumer Fraud Act]," regulations "which shall have the force of law," was granted to the Attorney General by N.J.S.A. 56:8-4. There can be no question but that "the Legislature intended to confer on the Attorney General the broadest kind of power to act in the interest of the consumer public * * *." Kugler v. Romain, 58 N.J. 522, 537 (1971).
Acting pursuant to the power thus granted, regulations have been adopted outlawing specific practices in various types of business, thus delineating specific standards of conduct with which persons engaged in those businesses must comply.
Among the practices so regulated are those involved in the advertising of motor vehicles for sale. Under N.J.A.C. 13:45A-2.1, the regulations apply to an "advertiser," defined in pertinent part as:
* * * any person as defined by N.J.S.A. 56:8-1 (d) who in the ordinary course of business is engaged in the sale or financing of motor vehicles or who in the course of any 12-month period offers more than three motor vehicles for sale, lease or rental, or who is engaged in the brokerage of motor vehicles whether for sale, lease or rental, and who directly or indirectly initiates, requests, or causes an advertisement to be made for motor vehicles; * * *
N.J.A.C. 13:45A-2.2 begins with a paragraph declaring that:
*123 (a) Without limiting any other practices which may be unlawful under the Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., the following motor vehicle advertising practices shall be unlawful thereunder:
and then continues with a listing and description, in seven separate sections, of various unlawful advertising practices. Included therein, as section 2 (ii), is:
The failure in any price advertisement to disclose any of the following:
(1) The year, make and model, and the series if such advertised motor vehicles have a designated series;
(2) Whether the motor vehicle is new or used;
(3) Whether the motor vehicle has been used as a demonstrator, executive, police or fire vehicle, or passenger vehicle for lease, rental or hire, when such prior use is known or should have been known by the advertiser;
(4) The bona fide odometer reading of any specifically advertised demonstration, executive or used motor vehicle. The advertiser may rely on his seller's affidavit or certification as to milage at the time the advertiser took possession of the motor vehicle provided such reliance is in good faith.
* * * [The remaining subsections relate for the most part to new motor vehicles.]
The reasonableness of the requirement that the bona fide odometer reading be set forth is beyond dispute. The number of miles an automobile has been driven is of critical importance in evaluating the worth of the automobile  a fact recognized by the Motor Vehicle Act and regulations adopted by the Division of Motor Vehicles (See N.J.S.A. 2A:170-50.1 et seq. prohibiting the downward alteration of "the mileage registering instrument of a used motor vehicle"; see also, N.J.A.C. 13:21-5.8 and 5.9 requiring a seller of a used motor vehicle to certify in writing at the time of sale the truth of the mileage appearing on the odometer of the vehicle.)
The regulation here involved  mandating the inclusion in the advertisement of the odometer reading of the vehicle  establishes a standard of conduct with which advertisers must comply, under pain of penal sanctions, regardless of intent or *124 moral culpability. The regulation falls within the class of "strict liability" penal statutes and regulations which a legislature or an authorized administrative agency may adopt to eliminate the social or economic problems with which they are concerned. Cf. Dept. of Health v. Concrete Specialties, Inc., 112 N.J. Super. 407 (App. Div. 1970); Grant Lunch Corp. v. Driscoll, 129 N.J.L. 408, 411 (Sup. Ct. 1943), aff'd 130 N.J.L. 554 (E. & A. 1943), cert. den. 320 U.S. 801, 64 S.Ct. 431, 88 L.Ed. 484 (1944); State v. Elmwood Terrace, Inc., 85 N.J. Super. 240, 246-247 (App. Div. 1964); State v. Kinsley, 103 N.J. Super. 190 (Cty. Ct. 1968), aff'd o.b. 105 N.J. Super. 347 (App. Div. 1969).
Apposite is what was said in Grant Lunch Corp. v. Driscoll, supra, in rejecting a contention that a liquor dealer should not have been penalized because one of his clerks inadvertently had sold a bottle of liquor below the minimum price fixed by a regulation of the Division of Alcoholic Beverage Control:
Although the sale was not accomplished in purposeful violation of the regulations it was such an act as would have been avoided had the prosecutor's clerks performed their duty; and in any event it was a flat violation of lawful regulations duly promulgated and fully grounded in the statute. [129 N.J.L. at 410-411]
The majority finds the cited cases inapposite because, in their view, N.J.S.A. 56:8-2 mandates that before one may be found guilty of violating the regulation in question, it must be shown that he did so knowingly and intentionally.
I find no such mandate in N.J.S.A. 56:8-2 nor do I find therein any legislative intent to limit the broad powers granted the Division to delineate standards of conduct or permissible commercial practices to which those who advertise used automobiles for sale must adhere.
N.J.S.A. 56:8-2 provides in pertinent part:
The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, *125 misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; * * *. [Emphasis added]
The majority's interpretation ignores that the word "knowing" appears only after the word or (which I have italicized) and applies only to the conduct thereinafter referred to. The word "knowing" does not appear in, nor does it have any application to, the preceding provision of the section proscribing "the act, use or employment by any person of any unconscionable commercial practice, deception" etc.
The omission of the word "knowing" from the provision just quoted is cogent evidence that the Legislature intended that, irrespective of the offender's intent, it is unlawful to use or employ an "unconscionable commercial practice."
Were there no prior enunciated governing and controlling standard of conduct, the issue of whether particular conduct constitutes an unconscionable commercial practice might present a factual issue. Here, however, there is no room for debate; a preexisting regulation seeking to compel truth in advertising has declared that the failure to include the odometer reading, as well as the other required information, in the advertisement is an unlawful "motor vehicle advertising practice."
I find no justification in the statute or elsewhere for the interpretation adopted by the majority which would impose on the Division, in its efforts to protect the consumer, the almost impossible task of showing an intentional failure to comply with one or more of the myriad regulations it has adopted to eliminate improper commercial practices, regulations of which all in the regulated business have been forewarned.
The majority's disposition of the appeal made it unnecessary for them to consider the remaining points advanced *126 for reversal. Those points challenged the propriety of imposing liability on an advertising agency  as distinguished from its client, the dealer  for a violation of the regulation. Appellant contends that his advertising agency is not an "advertiser" as that word is defined in N.J.A.C. 13:45A-2.1, and that if it is deemed so to be, the regulation and the underlying statute unconstitutionally discriminate against advertising agencies because of the exemption granted by the regulation and the statute (I quote from the regulation):
* * * to the owner or publisher of newspapers, magazines, publications or printed matter wherein such advertisement appears or to the owner or operator of a radio or television station which disseminates such advertisement when the owner, publisher or operator has no knowledge of the intent, design or purpose of the advertiser.
There is no substance to appellant's constitutional contention. Further, there is no reason for us to reach or decide, on the present record and without a full development of the scope of appellant's activities, whether he is an advertiser within the meaning of that term as defined in the regulations.
That issue was neither raised nor explored at the hearing before the Division. On the contrary, at the hearings before the Division appellant took the position that if any penalty were imposed, it should be imposed against him not against his customer, the automobile dealer, since it was his agency which was responsible for the omission.
I would affirm the order of the Division in each case.
NOTES
[1] Under the original act the powers of enforcement and regulation were assigned to the Attorney General. By L. 1967, c. 23 (N.J.S.A. 52:17B-5.6 et seq.) his functions, powers and duties under the act were directed to be exercised by him through a bureau then established in the Division of Law, the Office of Consumer Protection, headed by an executive director appointed by and serving at the pleasure of the Attorney General. The Attorney General's powers and duties were transferred in 1971 to the newly created Division of Consumer Affairs in the Department of Law and Public Safety. N.J.S.A. 52:17B-120, 124. N.J.S.A. 52:17B-120 provides that "the division shall be under the immediate supervision of a director who shall administer the work of the division under the direction and supervision of the Attorney General." The director is appointed by the Governor with the advice and consent of the Senate, and serves at the pleasure of the Governor.