177 N.J. Super. 358 (1981)
426 A.2d 1031
IN THE MATTER OF ELLIOT L. SHACK, O.D., P.A. AND CHARLES M. CUMMINS, O.D., P.A., LICENSED TO PRACTICE OPTOMETRY.
Superior Court of New Jersey, Appellate Division.
Submitted January 7, 1981.
Decided January 30, 1981.
*360 Before Judges MATTHEWS, MORTON I. GREENBERG and ASHBEY.
Giblin & Giblin, attorneys for defendants (Paul J. Giblin, on the brief).
John J. Degnan, Attorney General, attorney for respondents New Jersey State Board of Optometrists (Erminie L. Conley, Assistant Attorney General, of counsel; Douglas J. Harper, Deputy Attorney General, on the brief).
PER CURIAM.
Defendants, Elliot Shack and Charles M. Cummins, are optometrists licensed by the New Jersey Board of Optometrists ("Board"). On October 3, 1979, the Board notified defendants by letter that it had reviewed their newspaper advertisement regarding soft contact lenses and had determined that it violated N.J.S.A. 45:12-11(h) and (o) and N.J.S.A. 45:1-21(b) in that
1. There is no delineation of what `professional care' includes.
2. It appears that, in fact, the patient does not actually purchase the lenses for $65 (professional care required at additional cost).
N.J.S.A. 45:12-11(h) prohibits "false, fraudulent or misleading advertising of the practice of optometry," (o) prohibits "any conduct which is of a character likely to deceive or defraud the public," and N.J.S.A. 45:1-21(b) prohibits engaging "in the use or employment of dishonesty, fraud, deception, misrepresentation, false promise or false pretense."
The Board offered defendants "the opportunity of disposing of this matter without a hearing," if they signed a form admitting their violation of these statutes and each paid a $750 penalty. Defendants were advised that, if they wished "to *361 discuss mitigation of said penalty, you may present your arguments in writing or in person at a regularly scheduled Board meeting." Finally, the Board ordered them "to cease and desist such manner of advertising immediately."
Defendants' counsel requested the opportunity to appear before the Board to object to its actions. The Board held a plenary hearing. Defendants' counsel appeared, as did Dr. Shack. Dr. Cummins was not present. Dr. Shack was the only witness to testify before the Board.
A final decision and order by the Board held that defendants' "advertisement both on its face and as applied within the usual commercial setting is deceptive and misleading and, therefore, violative of N.J.S.A. 45:12-11(h) and (o), and N.J.S.A. 45:1-21(b) and (e)."[*] In so holding, the Board ordered defendants to cease and desist from advertising contact lenses for sale to the consuming public at a stated price unless:
(i) the advertisement clearly and conspicuously discloses a single total dollar price for the advertised lenses and all usual and necessary services and goods related thereto, or

(ii) the advertisement clearly and conspicuously discloses separate prices for the advertised lenses and all usual and necessary services and goods related thereto, the sum total of said prices to equal the total price to be paid for the advertised lenses and related services and goods.
The Board also ordered that the advertisements must set forth clearly and conspicuously "all usual and necessary services and goods," which must at least include an optometric examination fee, a contact lens evaluation fee, storage and sterilizing equipment, use instruction, and follow-up care. Finally, the Board assessed civil penalties against each defendant in the amount of $750 and imposed costs in the amount of $127.60 against defendants, jointly and severally.
On appeal, defendants contend that the Board's letter-notice violated their procedural due process rights; that their *362 advertisement was not misleading; that the Board used "the most ignorant consumer" as a measuring standard, which violated their first amendment rights to freedom of expression; and, that the Board used an "impermissible standard" (i.e., misleading on its face and as applied) to judge their advertisement.
While we agree that the Board's letter, at least facially, did not satisfy the due process requirements of notice provided in N.J.S.A. 52:14B-9(a) and (b) and N.J.A.C. 13:45-3.1(d), it did reveal to defendants the basis for the charges against them and the pertinent statutes determined to be violated. And the Board did eventually afford defendants a plenary hearing at which they were represented by counsel; Dr. Shack testified, and all of the violation determinations in the Board's letter were reviewed and challenged. As was observed in Goldberg v. Kelly, 397 U.S. 254, 267-268, 90 S.Ct. 1011, 25 L.Ed.2d 287, 299 (1970), due process is satisfied if a defendant has "timely and adequate notice" detailing the charges and "an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally."
The Board did give defendants timely and adequate notice of the charges against them and it did not deprive them of a full opportunity to be heard on the charges before formally assessing the penalties against them. Malady v. Bd. of Review, Div. of Emp. Security, 166 N.J. Super. 523, 530 (App.Div. 1979). See also, Horsman Dolls v. Unemployment Compensation Comm'n., 7 N.J. 541, 550-551 (1951), cert. den. 342 U.S. 890, 72 S.Ct. 201, 96 L.Ed. 667 (1951); N.J. Zinc Co. v. Board of Review, 25 N.J. 235, 239 (1957). Consequently, we find that defendants' procedural due process rights were not violated.
Defendants contend that their advertisement is not misleading, because they are no misleading statements contained "within the four corners" of the advertisement.
N.J.S.A. 45:12-11(h) and (o) prohibit a licensee from engaging in "misleading advertising" or conduct "of a character likely to deceive or defraud the public." N.J.S.A. 45:1-14 et seq., which *363 sets up uniform standards for license revocation, suspension and other disciplinary proceedings by professional and occupational boards within the Division of Consumer Affairs, prohibits licensees from engaging in the use of "deception" or "misrepresentation." N.J.S.A. 45:1-21(b).
We have found no reported cases after the enactment of N.J.S.A. 45:1-14 et seq. (July 13, 1978) construing or applying these particular aspects of the above statutes. We believe, however, valid analogies may be drawn from those cases construing the "deception" portions of the New Jersey Consumer Fraud Act and the Federal Trade Commission Act ("FTCA").
Section 5(a) of FTCA (15 U.S.C.A. § 45(a)(1)) declares "unfair or deceptive acts or practices in commerce" to be illegal. The Consumer Fraud Act, N.J.S.A. 56:8-2, defines an unlawful practice to be
[t]he act, use or employment of any ... deception [or] misrepresentation ... in connection with the sale or advertisement of any merchandise or real estate ..., whether or not any person has in fact been misled, deceived or damaged thereby....
Defendants' assertion that their advertisement cannot be deemed "misleading" because there are no misleading statements in it is not well founded. It has long been recognized that "a half-truth can be as deceptive as a positive misrepresentation" and this principle has been routinely applied under the FTCA. "Developments in the Law  Deceptive Advertising," Note, 80 Harv.L.Rev. 1005, 1047 (1967). A failure to disclose material information may cause an advertisement to be false or deceptive even though it does not state false facts. Simeon Management Corp. v. FTC, 579 F.2d 1137, 1145 (9 Cir.1978). The "prime ingredient of deception" is the advertisement's "capacity to mislead." Fenwick v. Kay American Jeep, Inc., 72 N.J. 372, 378 (1977). The criterion by which advertising is judged is "the likelihood of deception or the capacity to deceive." Montgomery Ward & Co. v. FTC, 379 F.2d 666, 670 (7 Cir.1967).
*364 At the Board hearing, Dr. Shack stated that he dispensed about 50 pairs of contact lenses a week. He asserted that his patients basically fell into two categories: (1) those who have never worn contact lenses before and who have received a contact lens prescription from another practitioner, and (2) those who already wear contact lenses and are just seeking new or replacement lenses. However, Dr. Shack admitted that out of these 50 pairs of contact lenses, only two pairs involved patients who came to him with prescriptions from other doctors. Dr. Shack also confirmed that the minimum contact lenses price set forth in the advertisement would apply only to a patient who came to him with a prescription from another practitioner.
The Board found that, in the "vast majority of situations," consumers responding to defendants' advertisement will need "some professional optometric services," for which they will be charged. Based on these findings, the Board apparently concluded that an advertisement, which does not disclose the above circumstances, is "deceptive and misleading" and violates the subject statutes.
There is nothing in the record to suggest that the Board's conclusion was arbitrary, capricious or unreasonable; that it violated legislative policies expressed or implied in the statutes governing the Board, or that it lacked fair support in the evidence. Therefore, we find no grounds to upset the Board's determination that the advertisement is "deceptive and misleading." Campbell v. Dept. of Civil Service, 39 N.J. 556, 562 (1963).
We find that defendants' advertisement is misleading in that it fails to disclose that, in the "vast majority of situations," consumers responding to advertisement will need "professional care." In other words, a consumer reading the advertisement knows that "professional care" (whatever it may consist) is not included in the advertised minimum price. The consumer also knows that there will be an "additional" charge for any "professional care" received. What the advertisement does not tell the consumer is that "professional care" is virtually certain to be required. At that point, the consumer is deceived or misled.
*365 Defendants assert that the Board, in determining that the advertisement was deceptive and misleading, utilized "the most ignorant consumer" as its measuring standard. On its face, the Board's decision and order indicates that the standard applied was "the average consumer." We, therefore, find defendants' contention to be without merit.
Defendants' contention that the Board used an "impermissible standard" to judge their advertisement is clearly without merit.
In view of the foregoing we conclude that if defendants desire to advertise with the inclusion of a price, then that price must include professional services as well as materials; otherwise, no price may be mentioned in an ad.
Modified and affirmed.
NOTES
[*] N.J.S.A. 45:1-21(e) provides for suspension or revocation of a professional license, if the holder "[h]as engaged in professional or occupational misconduct as may be determined by the board."