591 A.2d 943

WAYNE E. CHATTIN; FRANK J. INGARGIOLA AND BARBARA J. INGARGIOLA, HIS WIFE; JOSEPH J. MARTELLA AND BARBARA J. MARTELLA, HIS WIFE; ANTHONY BUCCAFERNI AND PATRICK SMITH, ON BEHALF OF THEMSELVES AND ON BEHALF OF A CLASS OF HOMEOWNERS, PLAINTIFFS–APPELLANTS AND CROSS–RESPONDENTS, v. CAPE MAY GREENE, INC., A NEW JERSEY CORPORATION, DEFENDANT–RESPONDENT AND CROSS–APPELLANT, AND CAPITOL PRODUCTS CORPORATION, DEFENDANT.

Argued May 6, 1991—Decided July 1, 1991.

*Thomas J. Vesper* argued the cause for appellants and cross-respondents (*McAllister, Westmoreland, Vesper & Schwartz,* attorneys, *Thomas J. Vesper* and *Dara A. Quattrone,* on the briefs).

*Frederick J. Dennehy* argued the cause for respondent and cross-appellant (*Wilentz, Goldman & Spitzer,* attorneys, *Frederick J. Dennehy, Lisa A. Rosenmertz,* and *Lisa Adubato Nesi,* on the briefs).

PER CURIAM.

The judgment of the Appellate Division is affirmed, substantially for the reasons expressed in Judge Skillman's majority opinion, reported at 243 *N.J.Super.* 590, 581 *A.*2d 91.

STEIN, J., concurring.

I join in the Court's affirmance of the judgment below, which reversed plaintiffs' liability verdict on their Consumer Fraud Act (Act) claim. I am in full agreement with the Appellate Division's conclusions that the trial court's jury instruction was erroneous because it failed "to explain the difference between the kinds of consumer fraud [that] require 'knowing' action and those [that] may be established without any showing of scienter," 243 *N.J.Super.* 590, 600, 581 *A.*2d 91 (1990), and that the error was not harmless. *Id.* at 603, 581 *A.*2d 91. I write separately because I anticipate that the issue remanded by the Appellate Division for the jury's determination at retrial will be particularly difficult for a jury to adjudicate. I also perceive that the Appellate Division's opinion may not adequately guide the trial court in framing an instruction that will clarify for the jury the distinction between conduct violative of the Act without proof of intent and conduct that violates the Act only if committed with an intent to deceive the purchaser or customer.

Preliminarily, I note that although this case was tried to a jury, no court has yet determined whether there exists a right to trial by jury for damage claims asserted under the Consumer Fraud Act. We explained in *Meshinsky v. Nichols Yacht Sales, Inc.*, 110 *N.J.* 464, 472–73, 541 *A.*2d 1063 (1988), that

[a]s originally enacted, the Act was exclusively enforced by the Attorney General, who was provided with broad powers to investigate, *N.J.S.A.* 56:8–3, subpoena records, *N.J.S.A.* 56:8–5, and seek injunctions prohibiting fraudulent conduct and orders of restitution to make whole any person damaged by conduct violating the Act, *N.J.S.A.* 56:8–8. * * *

In 1971, the Legislature amended the Act to permit a private right of action through which a successful plaintiff receives treble damages, reasonable attorneys' fees, filing fees, and costs. *L.* 1971, *c.* 247, § 7, codified at *N.J.S.A.* 56:8–19. [Footnote omitted.]

The 1971 amendment to the Act, however, did not provide for jury trials, and no right to a jury trial has been recognized in suits brought under the Act by the Attorney General seeking equitable relief and financial penalties. *See Kugler v. Market Dev. Corp.*, 124 *N.J.Super.* 314, 319, 306 *A*.2d 489 (Ch.Div. 1973); *Kugler v. Banner Pontiac–Buick, Opel, Inc.*, 120 *N.J. Super.* 572, 581–82, 295 *A*.2d 385 (Ch.Div.1972). Although this Court in *Shaner v. Horizon Bancorp*, 116 *N.J.* 433, 561 *A*.2d 1130 (1989), rejected the right to a jury trial in the context of a claim for discriminatory termination on the basis of age under the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5–1 to –42, its holding could be read to suggest by analogy that a statutorily-created cause of action under the Consumer Fraud Act does not carry with it the right to a jury trial. *Id.* at 454–55, 561 *A*.2d 1130. In any event, that issue is not before us and I advert to it only to emphasize my perception that the issue remanded by the Appellate Division for retrial is not particularly well-suited for resolution by a jury.

Simply stated, the critical issue on retrial is the categorization of Cape May Greene's use of the term "insulated windows" to describe to prospective purchasers windows with a double pane of glass and an uninsulated frame. The Consumer Fraud Act distinguishes between two categories of unlawful practices. The first category—which includes unconscionable commercial practice, deception, fraud, false pretense, false promise, and misrepresentation—does not require proof of intent to deceive, suggesting an analogy to what the common law denominates as equitable fraud. *See Jewish Center v. Whale*, 86 *N.J.* 619, 625, 432 *A*.2d 521 (1981). The second category—concealment, suppression, or omission of any material fact—requires proof that the offending conduct occurred knowingly and with an intent that others rely on the concealment, suppression, or omission. *See Fenwick v. Kay Am. Jeep, Inc.*, 72 *N.J.* 372, 377, 371 *A*.2d 13 (1977); *N.J.S.A.* 56:8–2. The Appellate Division observed that the "first category * * * consists of *affirmative* acts[ ] and the second category consists of *acts of omission.*" 243

*N.J.Super.* at 598, 581 *A.*2d 91. Viewing defendant's use of the term "insulated windows" as a statement that could be characterized either as an "affirmative act" or an "omission," the court determined that the jury instruction failed to "explain to the jury the difference between the kinds of consumer fraud consisting of affirmative acts, which may be committed without a showing of intent, and acts of omission, which must be committed knowingly in order for liability to be imposed under the Consumer Fraud Act." *Id.* at 598–99, 581 *A.*2d 91. In the court's view, the deficiency in the jury charge constituted reversible error necessitating a retrial on the issue of liability, in the course of which the jury is to be properly instructed on the critical distinction between an affirmative misrepresentation and a knowing omission made with intent to deceive. *Id.* at 603–04, 581 *A.*2d 91.

I share the Appellate Division's concern that an imprecise jury charge on the essential elements of an unlawful practice under the Act could erroneously cause a jury to impose a verdict resulting in treble damages and attorneys fees for conduct not violative of the Act. As the court observed in *D'Ercole Sales, Inc. v. Fruehauf Corp.,* 206 *N.J.Super.* 11, 501 *A.*2d 990 (App.Div.1985),

> [h]owever, attorneys fees, costs and treble damages are powerful weapons for the consumer and invoke a formidable remedy. Any breach of warranty, or of any contract for that matter, is unfair to the non-breaching party. Yet, "[i]n a sense, unfairness inheres in every breach of contract when one of the contracting parties is denied the advantage for which he contracted, but this is why remedial damages are awarded on contract claims. If such an award is to be trebled, the ... legislature must have intended that substantial aggravating circumstances be present." [*Id.* at 31, 501 *A.*2d 990 (quoting *United Roasters, Inc. v. Colgate–Palmolive Co.,* 649 *F.*2d 985, 992 (4th Cir.), *cert. denied,* 454 *U.S.* 1054, 102 *S.Ct.* 599, 70 *L.Ed.*2d 590 (1981)).]

The fly in the ointment, however, is that instructing the jury on the difference between an affirmative misrepresentation of fact and a knowing omission of a material fact is easier said than done.

As the Appellate Division acknowledges, the term "insulated window" applied to a double-pane window with an uninsulated

frame could be considered an affirmative misrepresentation to the extent that it is understood to mischaracterize the frame as insulated. It could also be viewed as a term that correctly describes the window in accordance with industry standards but omits to disclose the material fact that the frame is uninsulated. On a semantic level, a misrepresentation could be viewed as a statement requiring a correction to be truthful, and an omission could be characterized as a statement requiring an addition to be truthful. In practice, however, the distinction between a correction and an addition may be more apparent than real.

I note that the decided cases under the Consumer Fraud Act fail to illuminate the distinction between misrepresentations and omissions. The leading case is *Fenwick v. Kay American Jeep, Inc., supra,* 72 *N.J.* 372, 371 *A.*2d 13, in which two automobile dealers were charged with having violated a regulation promulgated under the Act pursuant to which an advertisement for a used automobile that fails to disclose the odometer reading constitutes an unlawful practice. The agency that placed the advertisements was joined as a respondent, and contended that a member of its staff inadvertently had failed to include the odometer reading. The hearing officer determined that the dealers and the agency had violated the Act, and that proof of intent was not required. The Appellate Division reversed, holding that intent was an essential element of the alleged violations. *Fenwick v. Kay Amer. Jeep, Inc.,* 136 *N.J.Super.* 114, 118–19, 344 *A.*2d 785 (1975). This Court reinstated the order of the Division of Consumer Affairs, holding that the omission of the odometer reading in violation of a specific regulation adopted by the Attorney General was a deceptive practice not requiring proof of intent:

> Significantly, the requirement that knowledge and intent be shown is limited to the concealment, suppression or omission of any material fact. Respondent argues that his failure to include the mileage in each sales ad was at most the omission of a material fact and would not be an unlawful practice unless knowledge and intent were shown.
>
> However, this argument overlooks the power of the Attorney General to adopt rules to further the purpose of the act to prevent fraud and other

deceptive practices. * * * The regulation here adopted by the Attorney General has the effect of preventing the possibility of such deception if strictly enforced without regard to the intent of the advertiser. * * *

Moreover, we are satisfied that failure to disclose the mileage in the present cases was more than the mere omission of a material fact. * * * The capacity to mislead is the prime ingredient of deception or an unconscionable commercial practice. Intent is not an essential element. Since consumer protection is the ultimate goal, the standards of conduct established by the Act and implementing regulations must be met regardless of intent except when the Act specifically provides otherwise. We therefore hold that the charges herein, in order to be sustained did not require a showing of intent. [72 *N.J.* at 377–78, 371 *A.*2d 13.]

Thus, an omission of a material fact that violates a specific regulation promulgated under the Act can be sufficiently deceptive to invoke the Act's sanctions without proof of intent.

The Appellate Division reached a similar conclusion in *In re Shack*, 177 *N.J.Super.* 358, 426 *A.*2d 1031 (1981), an administrative proceeding brought against licensed optometrists for violations of provisions of the licensing statute, *N.J.S.A.* 45:12–1 to –27, prohibiting, among other practices, misleading advertising, fraud, and deceptive conduct. The offending conduct was an advertisement offering soft-contact lenses for sixty-five dollars, without disclosing that patients invariably would require "some professional optometric services" for which a separate charge would be imposed. Defendants argued that their advertisement was not misleading because no misleading statements appeared "within the four corners" of the advertisement. *Shack, supra,* 177 *N.J.Super.* at 362, 426 *A.*2d 1031. The Appellate Division affirmed the decision of the State Board of Optometrists that the advertisement was deceptive and misleading, relying by analogy on cases decided under the Consumer Fraud Act and the Federal Trade Commission Act:

Defendants' assertion that their advertisement cannot be deemed "misleading" because there are no misleading statements in it is not well founded. It has long been recognized that "a half-truth can be as deceptive as a positive misrepresentation" and this principle has been routinely applied under the FTCA. "Developments in the Law—Deceptive Advertising," Note, 80 *Harv.L. Rev.* 1005, 1047 (1967). A failure to disclose material information may cause an advertisement to be false or deceptive even though it does not state false facts. *Simeon Management Corp. v. FTC,* 579 *F.*2d 1137, 1145 (9 Cir.1978). The

"prime ingredient of deception" is the advertisement's "capacity to mislead." *Fenwick v. Kay American Jeep, Inc.*, 72 *N.J.* 372, 378 [371 *A.*2d 13] (1977). The criterion by which advertising is judged is "the likelihood of deception or the capacity to deceive." *Montgomery Ward & Co. v. FTC,* 379 *F.*2d 666, 670 (7 Cir.1967). [*Id.* at 177 *N.J.Super.* 363, 426 *A.*2d 1031.]

See also *State v. Hudson Furniture Co.*, 165 *N.J.Super.* 516, 519–20, 398 *A.*2d 900 (App.Div.1979) (violation of Consumer Fraud Act regulation requiring notification to customers of available options concerning furniture undelivered on promised date constitutes unlawful practice without proof of intent to deceive); *Hyland v. Zuback*, 146 *N.J.Super.* 407, 415, 370 *A.*2d 20 (App.Div.1976) (Although boat repairman had estimated cost of boat repairs at $100 for parts and four hours labor, he had already worked nineteen hours when customer inquired about job and repairman responded that work was going "fine." The final bill was $467.75. The court held that repairman's conduct went beyond mere omission and constituted deception and misrepresentation in violation of Consumer Fraud Act.)

The point of this discourse is that our cases interpreting the Act indicate that there is no clear line of demarcation separating an act of misrepresentation from one of mere omission. Nor does the Model Jury Charge for the Act draw such a line; it therefore provides no guidance on how to distinguish one from the other. See *Model Jury Charges (Civil)* § 4.22(B) (April 1, 1987).

Disputes such as that between plaintiffs and CMG demonstrate that it is possible for a statement to be seen fairly as either a misrepresentation or as omitting a material fact. A misrepresentation and an omission share the same baneful feature: a capacity to mislead the customer. Yet the Act treats them differently. Treble damages, attorneys fees, and costs are the penalties for a defendant's misrepresentation no matter what the intent may have been; but for the same penalties to be imposed for an omission of fact, a plaintiff must prove scienter. The only logical basis for the Legislature's different treatment of the two must lie in its perception of different levels of culpability.

To the extent that a substantive distinction between a misrepresentation and a knowing omission can be ascertained from the cases and inferred from the legislative purpose, it should reflect the overriding principle that the powerful remedies made available by the Legislature in the Act are meant to respond to "substantial aggravating circumstances." *D'Ercole Sales, Inc., supra,* 206 *N.J.Super.* at 31, 501 *A.*2d 990. Thus, for a statement not contrary to a specific regulation to constitute a misrepresentation or other act of deceit in violation of the Act, its qualitative content must be so materially deceptive and its capacity to mislead so apparent that proof of intent is unnecessary. Whether denominated an affirmative statement or an omission, the distinguishing characteristic of a misstatement not requiring proof of scienter under the Act is that its inherent falsity is so manifest that its thoroughly unredeemable nature is itself the "substantial aggravating circumstance" that merits the Act's formidable penalties.

Because the substantive distinction between an affirmative misrepresentation and a knowing omission is elusive, I am of the view that the trial court on remand should evaluate carefully the evidence to determine whether it is sufficient to permit a jury to find that the use of the phrase "insulated windows" could constitute a misrepresentation not requiring proof of an intent to deceive. If it is not sufficient, the jury should be permitted to determine only whether the statement constitutes a concealment, suppression, or omission of a material fact and, if so, whether defendant intended to deceive its customers.

In all other respects, I join in the Court's affirmance of the judgment of the Appellate Division.

Justice CLIFFORD joins in this opinion.

HANDLER, J., dissenting.

I agree with the majority that the trial court's instructions intimated, if not fully explained, that an omission of a material fact requires knowledge, and, further, that a "misrepresenta-

tion" could consist of an "incomplete" statement, *i.e.*, omitted material facts. I also agree that the instructions did not delineate or differentiate adequately between a violation of the Consumer Fraud Act ("Act") for a misrepresentation consisting only of incorrect facts and a violation for knowingly omitting a material fact. However, although the deficiency in the instructions would appear to be more than technical or insubstantial, in the context of the evidence in this case, it did not have the capacity to mislead or confuse the jury. The jury's answers to the interrogatories were based on the fair and complete presentation of the evidence. Those answers clearly indicated that defendant Cape May Greene, Inc. ("CMG") was found liable only for misstating facts, not for omitting any. Because an "omission" was not involved in the misleading statement, that obviated the need to delineate the difference between the two kinds of misstatements or to determine whether the statement was made with knowledge or intent to deceive.

The Act prohibits "deception" and "misrepresentation" in connection with the sale or advertisement of merchandise without regard to the state of mind of the seller. *Fenwick v. Kay Am. Jeep, Inc.*, 72 *N.J.* 372, 377, 371 *A.*2d 13 (1977); *N.J.S.A.* 56:8–2. The Act neither elucidates nor defines those terms. We have stated that the "prime ingredient of deception" is the "capacity to mislead." *Fenwick, supra,* 72 *N.J.* at 378, 371 *A.*2d 13; *see In re Shack,* 177 *N.J.Super.* 358, 363, 426 *A.*2d 1031 (App.Div.), *certif. denied,* 87 *N.J.* 352, 434 *A.*2d 95 (1981); *cf. N.J.S.A.* 2C:20–4 (creation or reinforcement of false impression or failure to correct false impression that deceiver previously created or reinforced constitutes deception). A misrepresentation imports falsity or inaccuracy. See, *e.g., N.J.S.A.* 51:11–1 (defines misrepresentation as "any manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts"); *N.J.S.A.* 51:4–23, and certainly encompasses an untrue statement of fact. *Black's Law Dictionary* 1152 (4th ed. 1968). Those terms, then, may be contrasted with a

statement that misleads merely because of the failure to include material facts. *N.J.S.A.* 56:8–2; *Webster's Ninth New Collegiate Dictionary* 823 (1987). With respect to such statements, the Act expressly requires knowledge or scienter as a basis for liability. It does not require such a showing for a violation through a misrepresentation consisting only of inaccurate or false facts.

The critical issue then is whether the jury fairly, actually, and with adequate understanding determined that CMG had made a misrepresentation consisting only of inaccurate or false facts. I conclude that the jury did. The jury answered the trial court's two special interrogatories as follows:

> Would the average consumer understand the term "insulated aluminum windows" to refer only to the glass or to the entire window unit? (Check one)
>
> Only the glass _____
>
> Entire window unit    X
>
> Would the average consumer understand the term "insulated windows" to refer only to the glass or to the entire window unit? (Check one)
>
> Only the glass _____
>
> Entire window unit    X

The significance of those answers is that they demonstrate that the jury expressly determined that the representation made by CMG concerning "insulation" referred only to the "entire window unit," that is, the window with its frame. That being so, CMG's representation about "insulation" could mean only that the "entire window unit" was insulated. Because the "entire window unit" was not insulated, that statement was one containing inaccurate facts, not one that omitted any material fact. I thus agree substantially with Judge Brody's dissent below that the jury's answers effectively resolve the matter of liability under the Consumer Fraud Act. 243 *N.J.Super.* 590, 622, 581 *A.*2d 91.

I read none of the opinions in this case—the majority of the Appellate Division below, which the Court now adopts, the dissent of Judge Brody, and the concurrence of Justice Stein— to suggest that CMG's representation was not a statement that consisted of inaccurate and false facts. No opinion disputes that the jury found that CMG's phrases "insulated aluminum windows" and "insulated windows" referred to the "entire window unit," and not only to the glass or window panes. In short, the phrases constitute assertions containing false facts because they inaccurately stated to the average consumer that the entire window unit was insulated when, in fact, only the glass or window pane, not the surrounding aluminum frame, was insulated. *See Barry v. Arrow Pontiac, Inc.*, 100 *N.J.* 57, 69 & n. 6, 494 *A.*2d 804 (1985) (test is whether advertisement would mislead average consumer); *Shack, supra*, 177 *N.J.Super.* at 365, 426 *A.*2d 1031 (deceptiveness of advertisement measured by understanding of "average consumer"); *cf. Southwest Sunsites, Inc. v. FTC*, 785 *F.*2d 1431, 1435 (9th Cir.1986) (Federal Trade Commission relies on consumer's reasonable behavior in determining deception), *cert. denied*, 479 *U.S.* 828, 107 *S.Ct.* 109, 93 *L.Ed.*2d 58 (1986); *American Home Prods. Corp. v. FTC*, 402 *F.*2d 232, 236 (6th Cir.1968) (word defined in terms of average consumer's interpretation).

That conclusion renders harmless any error in the trial court's instructions. In context, the jury's answers to the interrogatories did not depend on the fine legal distinction between a violation resulting from the omission of facts and one resulting from inaccurate facts. Rather, the jury essentially was asked, "What did CMG promise when it stated that its homes contained 'insulated windows' or 'insulated aluminum windows'?" By responding that CMG had stated that the entire window unit was insulated, the jury in effect determined that CMG promised its consumers that they would have "insulated aluminum windows"—windows and frames included. That was a false statement because it contained inaccurate facts, not because it omitted material facts. *Cf. Fenwick,*

*supra,* 72 *N.J.* at 378, 371 *A.*2d 13 (failure of advertisement to disclose mileage of used car more than omission of material fact and constitutes deception or unconscionable commercial practice as defined by implementing regulations; thus, no showing of intent required to prove violation).

The Court, in relying on the majority opinion below, responds that the "capacity to mislead" is a characteristic of both false factual statements and omissions, and that the jury's answers to the interrogatories did not specify whether the capacity to mislead flowed from an affirmative misstatement of fact in the phrase "insulated windows" or an omission therefrom. 243 *N.J.Super.* at 602, 581 *A.*2d 91. In my view, the jury was not required to specify whether the deception inhered in omitted or misstated facts because it had already determined that the deception amounted to misstated facts.

The concurring opinion goes farther than the Court. It would construe the Act to require knowledge or intent to mislead with respect to both kinds of statements, those that contain false facts and those that omit material facts; only if misrepresentations are so materially deceptive and their capacity to mislead so apparent would proof of intent be unnecessary. *Ante* at 526–527, 591 *A.*2d at 946–947. I find no basis for an interpretation that would, at least with respect to misrepresentations consisting of statements with false or inaccurate facts, make the Act *less* protective of consumer interests by insisting on proof of knowledge when none is now required. Further, I find no warrant to apply such a distinction in this case where the jury necessarily found that the statement had the capacity to mislead the average consumer.

Under the circumstances, the question that intrigues the majority—whether the jury found the brochure misleading due to an "omission" of material fact or a misrepresentation—need not be posed. The question was effectively subsumed and mooted by the jury's answers to interrogatories: it obviously concluded that CMG's statements were ones with incorrect

facts, not ones that omitted facts. Hence, the jury did not have to consider the question of scienter because no showing of the seller's mental state is required when it makes such a misrepresentation.

In addition, a misrepresentation consisting of inaccurate facts is not converted into a statement that omits material facts merely because additional, clarifying facts can be added to neutralize or correct the inaccurate facts. *E.g., Hyland v. Zuback,* 146 *N.J.Super.* 407, 415, 370 *A.*2d 20 (App.Div.1976) (boat repairman who informed customer that repairs were progressing as planned but neglected to mention that the cost would vastly exceed the original estimate made a misrepresentation because statement had capacity to mislead consumer into believing original cost estimate would not be changed); *cf. Southwest Sunsites, Inc., supra,* 785 *F.*2d 1431 (representation that particular land was suitable for use as a homesite, farm, or ranch inaccurately portrayed the practical and economic suitability of land for those uses); *Continental Wax Corp. v. FTC,* 330 *F.*2d 475 (2d Cir.1964) (product named "Continental Six Month Floor Wax" falsely represented characteristics of product because product did not last as effective floor covering for period of six months); *Country Tweeds, Inc. v. FTC,* 326 *F.*2d 144 (2d Cir.1964) (seller's use of testing company's report comparing seller's fabric to "Best Quality Cashmere produced to date" falsely represented that testing company had tested rival fabric and found it to be best quality cashmere produced to date). To require that a "misrepresentation" must consist of a statement that cannot be corrected by additional facts in order to be considered an affirmative misstatement of facts, as implied by the majority, would obliterate the statutory distinction between a misrepresentation consisting of false facts and the omission of material facts. I recognize that a different case may present itself when there has been no affirmative description of the characteristics of the product in dispute. That is not the case here because the jury found that CMG had conveyed false information in its affirmative description of the windows.

Because the Act is designed to protect consumers against such misrepresentations, I would give plaintiffs the benefit of the verdict.

Therefore, I dissent.

CLIFFORD and STEIN, JJ., concurring in the result.

*For affirmance*—Justices CLIFFORD, POLLOCK, O'HERN, GARIBALDI and STEIN—5.

HANDLER, J., dissents.