765 A.2d 714

YUSEF ALI, PLAINTIFF–APPELLANT, v. RUTGERS,
THE STATE UNIVERSITY OF NEW JERSEY,
DEFENDANT–RESPONDENT.

Argued September 12, 2000—Decided November 30, 2000.

*Mary J. Maudsley* argued the cause for appellant (*April, Maudsley & Goloff*, attorneys).

*Aron M. Schwartz* argued the cause for respondent (*Greenbaum, Rowe, Smith, Ravin, Davis & Himmel,* attorneys; *Mr. Schwartz* and *Rachel M. Coe,* on the brief).

The opinion of the Court was delivered by

VERNIERO, J.

In *Montells v. Haynes,* 133 *N.J.* 282, 627 *A.*2d 654 (1993), this Court held that claims arising under the Law Against Discrimination, *N.J.S.A.* 10:5–1 to –49 (LAD), are subject to the two-year statute of limitations for personal injuries found at *N.J.S.A.* 2A:14–2, rather than the general six-year limitations period established under *N.J.S.A.* 2A:14–1. We further concluded that, because the holding in *Montells* represented a new rule of law, it would not apply to "cases the operative facts of which arose before the date of [that] decision." *Montells, supra,* 133 *N.J.* at 298, 627 *A.*2d 654.

In this LAD case, plaintiff alleges facts arising both prior to and after the date of the *Montells* decision, July 27, 1993. We conclude that in cases in which the operative facts arise both before and after the date of *Montells,* plaintiffs must file their actions prior to the expiration of the six-year limitations period or within two years from the date of this opinion, whichever is earlier. Under that standard, plaintiff's complaint was timely filed and may proceed.

I.

Defendant Rutgers University established the Paul Robeson Cultural Center on its New Brunswick campus in 1969 to help promote a culturally diverse educational experience for its students. Defendant hired plaintiff to work at the Center in a temporary position in 1980. Plaintiff's position became permanent in 1981. To confirm that status, John S. Salapatas, Associate Provost of the University, wrote plaintiff a letter dated August 4, 1981, stating in part: "I am very pleased to be able to offer you the appointment of Director of the Paul Robeson Cultural Cen-

ter.... The starting date of this appointment is September 1, 1981, with an annual salary of $20,224. You would be eligible to receive salary increases which have normally occurred each year." Plaintiff accepted the offer in writing three days later, also referring to the appointed position as "Director."

In June 1992, the Associate Provost established an ad hoc committee to review the organizational structure of the Center. The committee issued a report outlining a recommended set of changes in the Center's structure, including the creation of several new positions. Based on that report, defendant established the position of "Director of the Paul Robeson Cultural Center," which had not been previously listed as an official title on its payroll.

On November 24, 1992, plaintiff learned that defendant regarded him as the "Administrative Coordinator" of the Center, not its "Director." Plaintiff served as the highest-ranking employee at the Center until defendant hired a "Director" in September 1993. Plaintiff continued to work at the Center as "Administrator" until the summer of 1995 without a change in salary.

From September 1, 1995, until June 30, 1996, plaintiff was on unpaid leave to pursue an adjunct faculty position at another institution. Plaintiff did not return to the Center. Instead, on June 3, 1996, plaintiff filed a complaint in the Law Division against defendant, alleging that notwithstanding the "Director" designation expressed in the August 4, 1981, letter, he was paid only as an "Administrative Coordinator." He asserted breach of contract and discriminatory conduct based on race in violation of LAD.

Defendant filed an answer, denying all allegations. Thereafter, defendant moved for summary judgment. The trial court granted defendant's motion after hearing arguments of counsel. Defendant's counsel opened that argument by informing the court that plaintiff's counsel had determined not to pursue the LAD claim because of the statute of limitations. Plaintiff's counsel verified that determination, stating to the trial court: "Your Honor, with respect to the New Jersey Law Against Discrimination, there is a two-year statute of limitations and I can't contest that[.]" Accord-

ingly, counsel focused on plaintiff's contract claim. In granting defendant's motion, the trial court ruled that the contract claim could not be sustained, that plaintiff had not exhausted his administrative remedies, and "[t]hird, ... that the contract claim, as well as the New Jersey LAD claim[,] are barred by statute of limitations."

Shortly thereafter, plaintiff filed a motion for reconsideration solely to address the LAD statute-of-limitations issue. In a letter to the court, plaintiff's counsel stated candidly that she may have been "incorrect" in her concession expressed at the earlier proceeding. Plaintiff's corrected position was that *Montells* did not bar his complaint because the underlying facts had arisen prior to the date of that decision. The trial court denied the motion.

Before the Appellate Division, plaintiff appealed the grant of summary judgment, asserting that the trial court erred in its finding that there was no sustainable contract claim, in holding that plaintiff did not exhaust his administrative remedies, and in denying plaintiff's application for reconsideration in respect of the LAD claim. In response, defendant argued that there was no contract between the parties or, alternatively, that plaintiff's contract claim was time-barred, that plaintiff had failed to exhaust his administrative remedies, and that plaintiff's LAD claim was similarly barred. Additionally, defendant argued that irrespective of any analysis under *Montells*, plaintiff was judicially estopped from asserting his LAD claim in view of his counsel's statement before the trial court in the summary judgment proceeding.

In an unreported opinion, the Appellate Division agreed with defendant that there was no sustainable contract claim and that plaintiff's LAD claim was time-barred under *Montells*. In view of its disposition, the Appellate Division did not examine the trial court's alternative holding that plaintiff failed to exhaust administrative remedies; nor did the court decide the question of judicial estoppel. Plaintiff petitioned this Court solely to address the *Montells* issue. We granted certification, 163 *N.J.* 76, 747 *A.*2d 285 (2000). Following oral argument, we invited the parties to

submit additional briefs concerning whether plaintiff's LAD claim was barred by the doctrine of judicial estoppel.

## II.

The LAD does not contain a specific statutory limitation for filing a claim in Superior Court. Until the decision in *Montells,* the applicable statute of limitations had been unclear. As a result, federal and state courts grappled with that question, sometimes arriving at inconsistent conclusions. *See, e.g., United States v. Bd. of Educ.,* 798 *F.Supp.* 1093, 1099 (D.N.J.1992) (finding six-year period applicable); *White v. Johnson & Johnson Prod., Inc.,* 712 *F.Supp.* 33, 38 (D.N.J.1989) (applying two-year period); *Fisher v. Quaker Oats Co.,* 233 *N.J.Super.* 319, 320, 559 *A.*2d 1 (App.Div.), *certif. denied,* 117 *N.J.* 628, 569 *A.*2d 1331 (1989) (accepting without analysis six-year period).

As noted, this Court settled the question in *Montells.* The Court reasoned that because discrimination claims under the LAD resembled personal-injury actions, the two-year limitations period found at *N.J.S.A.* 2A:14-2 should control. *Montells, supra,* 133 *N.J.* at 291–92, 627 *A.*2d 654. However, because the issue at that time was so unsettled, the Court determined that its holding should apply prospectively only. *Id.* at 298, 627 *A.*2d 654. Accordingly, the Court directed that the two-year limitations period would apply "only to cases in which the operative facts arise after the date of the decision[,]" namely, July 27, 1993. *Ibid.* The Court further instructed that the two-year limitations period would not apply "to cases the operative facts of which arose before" that date. *Ibid.*

██ The present case involves a question not specifically addressed in *Montells:* whether to apply the six-year limitations period recognized by some pre-*Montells* courts or the post-*Montells* two-year limitations period to an action involving factual allegations arising both before *and* after the date of that decision. That question turns on a fair reading of the express language in *Montells,* which instructs litigants that the holding in that case

would not apply to any case "the operative facts of which" arose prior to July 27, 1993. Because plaintiff, along with other litigants, may have reasonably relied on that literal language, we should not depart from it here. Thus, given that some of the operative facts alleged in plaintiff's complaint arose prior to July 27, 1993, the two-year limitations period recognized in *Montells* does not govern this case.

The dissent argues persuasively that plaintiff's cause of action did not accrue until the last alleged element of discrimination occurred, that being the hiring of plaintiff's replacement in September 1993. Under the dissent's approach, because accrual of the action occurred after the Court's decision in *Montells*, the two-year limitations period would govern, thus foreclosing plaintiff's complaint.

■ Our disagreement with the dissent is slight but significant for purposes of our disposition. We agree that plaintiff's cause of action did not accrue until sometime after the *Montells* decision. "When an individual is subject to a continual, cumulative pattern of tortious conduct, the statute of limitations does not begin to run until the wrongful action ceases." *Wilson v. Wal–Mart Stores,* 158 *N.J.* 263, 271, 729 *A.*2d 1006 (1999). Nothing in this opinion is intended to alter our existing jurisprudence in that regard.

■ In the context of the present dispute, however, "accrual" should not be considered synonymous with "operative facts." "Accrual" is a technical term found in statutes of limitation to denote the date on which the statutory clock begins to run. The term "operative facts," on the other hand, signifies events or facts relevant to a cause of action. Although an accrual of an action necessarily depends on operative facts, *Burd v. New Jersey Telephone Co.,* 76 *N.J.* 284, 301, 386 *A.*2d 1310 (1978), in this setting the two concepts are legally distinct.

We recognize that certain patterns of allegedly discriminatory conduct, beginning prior to July 27, 1993, might extend far into

the future, placing litigants in the untenable position of having to try extremely stale claims. As noted in *Montells:*

> Evidence of discrimination, especially proof of sexual discrimination, is vulnerable to the passage of time. With racial slurs, insults about sexual orientation, or sexually-suggestive remarks, the proof generally depends on testimonial evidence. Depending on the memory and availability of witnesses, that testimony can dissipate or even disappear over time. Sexual harassment, which often occurs in private, presents special problems. A sexual-harassment claim often implicates the credibility of both the accuser and the accused, requiring a decision about who is telling the truth. That decision becomes harder with the passage of time. Fairness to the accuser, the accused, and to the judicial system require a timely adjudication of discrimination claims.
>
> [*Montells, supra,* 133 *N.J.* at 293, 627 *A.*2d 654.]

■ Accordingly, we hold that for LAD actions accruing after the date of the *Montells* decision but before the date of this opinion, in which plaintiffs allege operative facts arising prior to July 27, 1993, the limitations period is the earlier of six years from the date of accrual or two years from the date of this opinion. For LAD actions accruing after the date of this opinion, the limitations period is two years from the accrual date. We conclude that our holding reasonably accommodates the equitable principles undergirding the prospective application of *Montells.* Most importantly, today's clarification will avoid the unfairness associated with litigants being "placed in a position of having to guess the trigger date for the statute of limitations[.]" *Lacey Mun. Util. Auth. v. NJ DEP*, 162 *N.J.* 30, 39, 738 *A.*2d 955 (1999).

### III.

For completeness, we comment briefly on defendant's argument that plaintiff's action should be barred by the doctrine of judicial estoppel. The Appellate Division recently summarized the contours of that doctrine:

> The purpose of the judicial estoppel doctrine is to protect "the integrity of the judicial process." *Cummings v. Bahr,* 295 *N.J.Super.* 374, 387, 685 *A.*2d 60 (App.Div.1996). A threat to the integrity of the judicial system sufficient to invoke the judicial estoppel doctrine only arises when a party advocates a position contrary to a position it successfully asserted in the same or a prior proceeding. *Chattin v. Cape May Greene, Inc.,* 243 *N.J.Super.* 590, 620, 581 *A.*2d 91 (App.Div. 1990), *aff'd o.b.,* 124 *N.J.* 520, 591 *A.*2d 943 (1991); *Brown v. Allied Plumbing &*

*Heating Co.*, 129 *N.J.L.* 442, 446, 30 *A.*2d 290 (Sup.Ct.), *aff'd*, 130 *N.J.L.* 487, 33 *A.*2d 813 (E. & A.1943); *Bell Atl. Network Servs., Inc. v. P.M. Video Corp.*, 322 *N.J.Super.* 74, 95, 730 *A.*2d 406 (App.Div.), *certif. denied*, 162 *N.J.* 130, 741 *A.*2d 98 (1999) (footnote omitted). "[T]o be estopped [a party must] have convinced the court to accept its position in the earlier litigation. A party is not bound to a position it unsuccessfully maintained." *In re Cassidy*, 892 *F.*2d 637, 641 (7th Cir.), *cert. denied*, 498 *U.S.* 812, 111 *S.Ct.* 48, 112 *L.Ed.*2d 24 (1990).

. . . .

It is also generally recognized that judicial estoppel is an "extraordinary remedy," which should be invoked only "when a party's inconsistent behavior will otherwise result in a miscarriage of justice." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 *F.*3d 355, 365 (3d Cir.1996) (quoting *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 *F.*2d 414, 424 (3d Cir.) (Stapleton, J., dissenting), *cert. denied*, 488 *U.S.* 967, 109 *S.Ct.* 495, 102 *L.Ed.*2d 532 (1988)); *see also [Teledyne Indus., Inc. v. NLRB*, 911 *F.*2d 1214, 1218 (6th Cir.1990) ] ("Judicial estoppel is applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement."). Thus, as with other claim and issue preclusion doctrines, judicial estoppel should be invoked only in those circumstances required to serve its stated purpose, which is to protect the integrity of the judicial process.

[*Kimball Int'l, Inc. v. Northfield Metal Prod.*, 334 *N.J.Super.* 596, 608, 760 *A.*2d 794 (App.Div.2000) (footnote omitted).]

■ Applying those tenets, we are satisfied that plaintiff should not be estopped from asserting his LAD claim. Plaintiff did not litigate the *Montells* issue before the trial court, successfully or otherwise, but rather waived the issue entirely. Plaintiff's counsel quickly sought to withdraw that waiver and requested the trial court to reconsider its prior decision. Before the Appellate Division, both parties briefed and argued the *Montells* question, which the court resolved in favor of defendant. Against that procedural background, we discern no threat to the integrity of the judicial system in allowing plaintiff's LAD claim to proceed.

Lastly, we do not suggest that a litigant should be permitted to retract waivers freely or force other litigants to confront issues considered resolved in an earlier stage of litigation. Rather, courts must analyze each case by considering the totality of circumstances to determine whether the extraordinary remedy of estoppel should be invoked. In so doing here, we see no compel-

ling circumstances or injustice to defendant to warrant our invoking the doctrine of judicial estoppel in this appeal.

## IV.

We reverse the judgment of the Appellate Division to the extent that it rejects the timeliness of plaintiff's LAD claim. We remand the matter to the Law Division for trial of that claim.

LaVECCHIA, J., dissenting.

I disagree with the majority and would affirm the Appellate Division's holding that plaintiff's continuing-violation complaint against Rutgers, brought pursuant to the New Jersey Law Against Discrimination (LAD), *N.J.S.A.* 10:5–1 to 5–42, is barred by the two-year statute of limitations determined to be applicable in *Montells v. Haynes,* 133 *N.J.* 282, 627 *A.*2d 654 (1993).

## I.

In June 1996, plaintiff brought this LAD action contending that from 1980 through September 1993 he was employed as the "Director" of the Paul Robeson Cultural Center at Rutgers University, but was paid as an "Administrative Coordinator." He claims that the differential in pay between what he received as administrative coordinator and the higher range paid to directors was a result of race discrimination.

On July 27, 1993, this Court issued its decision in *Montells v. Haynes, supra.* Later, in September 1993, after a search process in which plaintiff applied and was considered for the newly created position of "Executive Director for the Paul Robeson Center," Rutgers hired Dr. Rae Alexander Minter. Plaintiff continued working as administrative coordinator, reporting to Dr. Alexander Minter through the summer of 1995, receiving the same salary as

before. There is no question that plaintiff's cause of action accrued no later than the date on which he was replaced by Dr. Alexander Minter. However, plaintiff did not file his complaint until June 3, 1996.

Plaintiff's complaint alleges two counts. The first sounds in contract and asserts that from 1980 through 1993 plaintiff performed as a director within the University, but was paid only as an administrative coordinator. The trial court's dismissal of that count was affirmed by the Appellate Division. It is not before us.

The second count alleges the same facts during the same time period and asserts that the pay disparity was due to discrimination on the basis of race, contrary to the LAD. For this alleged continuing discrimination in the terms and conditions of his employment, plaintiff seeks compensatory and other damages.

The trial court applied a two-year statute of limitations to plaintiff's LAD claim and dismissed it. On appeal, the Appellate Division affirmed, holding that a plaintiff could not reasonably rely on a six-year statutory period beyond two years after the *Montells* decision issued. In support of its decision, the panel cited Justice Garibaldi's dissent in *Wilson v. Wal–Mart Stores,* 158 *N.J.* 263, 287–89, 729 *A.2d* 1006 (1999), and the decision in *Standard v. Vas,* 279 *N.J.Super.* 251, 254–56, 652 *A.2d* 746 (App.Div.1995), in which the Appellate Division held that a change in the age of majority from twenty-one to eighteen did not give those who had relied on the age of twenty-one a period of two years past their twenty-first birthdays to file their claims.

The majority now reverses and holds that because plaintiff claimed a continuing violation, some aspects of which predate the decision in *Montells,* he is entitled to the benefit of the six-year statute of limitations from the point at which he was replaced as director. To rescue this plaintiff's cause of action, the majority points to plaintiff's contention that he relied on the Court's language in *Montells* concerning the decision's implementation in delaying his institution of suit. Plaintiff, and the majority, focus on the following discussion in *Montells:*

> The state of the law on the applicable statute of limitations under LAD was sufficiently murky to justify plaintiff's reasonable reliance on the six-year period. In addition, the Legislature has directed a liberal reading of LAD to afford the greatest protection to victims of discrimination. On balance, we conclude that our decision today should apply purely prospectively. Consequently, it applies only to cases in which the operative facts arise after the date of decision. *See Coons II, [Coons v. American Honda Motor Co., Inc.], supra,* 96 *N.J.* [419] at 425–35, 476 *A.*2d 763 [1984]. Our decision does not apply to this case, pending cases, or to cases the operative facts of which arose before the date of this decision.
>
> > [*Montells, supra,* 133 *N.J.* at 298, 627 *A.*2d 654.]

The majority interprets the term "the operative facts" in *Montells* to mean that *all* facts must postdate the issuance of *Montells* in order for the newly announced two-year limitation period to apply. I disagree.

## II.

Plaintiff's cause of action under the LAD is bottomed on his contention that while he occupied the position of director of the Paul Robeson Cultural Center he was not paid the salary for that position. Rather, he and he alone among directors was paid at the lower salary range for administrative coordinator. Thus couched, his claim for statute-of-limitations purposes certainly accrued no later than September 1993, when he was replaced as director by Dr. Alexander–Minter. It is true that he could have brought the suit sooner, because under his continuing-violation theory each separate act of paying him at a discriminatorily low salary level since 1980 constituted a separate act of discrimination, but he was under no obligation to do so.

Plaintiff is situated no differently than another victim of discrimination who suffered a wrong in September 1993. Both have causes of action that accrued as of that date. Yet plaintiff claims he should be treated more indulgently in the sense that the hypothetical victim indisputably must bring his suit within two years of the single act of discrimination committed against him in September 1993, but plaintiff claims an entitlement to bring his claim within six years of the last act in a series of continuing acts of discrimination committed against him. He does not assert a

rational basis for the privileged position he seeks. Logic dictates that he should be held to a stricter standard because he relies on facts that are considerably more dated than those of the hypothetical victim, and as the majority acknowledges, justice in some circumstances calls for prompt exposition of evidence, not a lengthy delay in the testing of the credibility of the evidence.

Plaintiff rather argues that we should accord him special status because the language the Court used in announcing the rule of prospective application of the two-year statute of limitations in *Montells* misled him and lulled him into a sense of complacency about when to bring his suit. Unlike the majority, I find this argument utterly unpersuasive.

The Court's reference to "the operative facts" in *Montells* must be understood sensibly and in the context of the seminal issue that was decided in that case: determining the timeliness of a LAD action. In the context of analyzing a cause of action for timeliness, the term "the operative facts" of a cause of action commonly relates to the timing of "accrual" of the claim. The two terms are related, and not distinct. As recognized in *Burd v. New Jersey Telephone Co.*, 76 *N.J.* 284, 301, 386 *A.*2d 1310 (1978)(Handler, J., dissenting), the accrual date of a claim pursuant to a timeliness analysis is determined by the operative facts of the cause of action unless delayed by operation of some legal principle, such as the discovery rule. Similarly, the judicially developed doctrine of "continuing violation" extends the reach of civil rights statutes, including the LAD, by delaying the accrual date of such claims to the latest possible date from among the operative facts, but recognizes that all of the facts included in the continuous violation are actionable and timely. *Wilson, supra,* 158 *N.J.* at 274, 729 *A.*2d 1006.

Plaintiff here asserts such a "continuing-violation" claim. He seeks damages for the allegedly illegal salary paid to him dating back to 1980 and continuing until Dr. Alexander Minter was appointed as Director of the Paul Robeson Center. Continuing-violation cases have been recognized in LAD claims for decades in

New Jersey. *See Terry v. Mercer County Bd. of Chosen Free-holders,* 173 *N.J.Super.* 249, 253, 414 *A.*2d 30 (App.Div.1980), *modified on other grounds,* 86 *N.J.* 141, 430 *A.*2d 194 (1981) (holding that discriminatory conduct in form of unequal wages and refusals to promote are continuing violations for purposes of determining whether claim is barred from relief); *Decker v. Board of Educ. of Elizabeth,* 153 *N.J.Super.* 470, 474, 380 *A.*2d 285 (App.Div.1977) (recognizing act of sex discrimination as continuing violation), *certif. denied,* 75 *N.J.* 612, 384 *A.*2d 842 (1978).

This Court in *Wilson v. Wal–Mart Stores* acknowledged that several courts, including the Appellate Division decision in *Terry v. Mercer County Board of Chosen Freeholders, supra,* recognize that the "cumulative effect of a series of discriminatory or harassing events represents a single cause of action for tolling purposes and that the statute of limitations period does not commence until the date of the final act of harassment." *Wilson, supra,* 158 *N.J.* at 273, 729 *A.*2d 1006. In *Wilson,* the Court conceded that a claim, if viewed as a continuing tort of discrimination, is "indivisible." *Id.* at 274, 729 *A.*2d 1006. In that matter, it was necessary to conclude that Wilson's claim was a continuing LAD violation in order to find her predecessor employer, K–Mart, liable for damages. It is illuminating here that in the context of considering the viability of Wilson's continuing-violation contentions as against Wal–Mart and K–Mart, which involved facts spanning both before and after the date of the *Montells* decision, the Court applied the two-year statute of limitations period to plaintiff's action. *Ibid.; see also id.* at 276–77, 729 *A.*2d 1006 (Pollock, J., dissenting) (applying two-year statute of limitations to plaintiff's claim as against K–Mart, where last act of alleged discrimination ceased after date of *Montells* decision).

### III.

It is incongruous and inequitable to treat differently one plaintiff whose continuing-violation claim of discrimination started years before the *Montells* decision and ended years after that

decision and another plaintiff whose claim of discrimination involves facts that all occurred on the same day that the first plaintiff's ended. Both had their causes of action accrue on the same day. Yet the majority's holding would treat more indulgently the plaintiff whose claim is more stale. Thus, the plaintiff who waited longer to pursue his claim would be rewarded with the application of an even longer statute of limitations-six years instead of two. To read the Court's language in *Montells* to compel such a conclusion is unreasonable. Although the language arguably may be said to be imprecise, it is being used to compel an unreasonable result. Moreover, the result is inconsistent with the Court's consideration and application of *Montells* in the setting of another continuing-violation LAD action in *Wilson*.

I recognize that because of the majority's ruling, the discrepancy in treatment presented by this case will not be a continuing anomaly. Henceforth, when a cause of action involves alleged facts that have arisen prior to July 27, 1993, "plaintiffs must file their actions prior to the expiration of the six-year statute of limitations period or within two years from the date of this opinion, whichever is earlier." 166 *N.J.* at 282, 765 *A.*2d at 715. Nonetheless, because I see no reasonable basis to distinguish plaintiff from others whose causes of actions accrued post-*Montells,* I respectfully dissent.

*For reversal and remandment*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO and ZAZZALI—6.

*For affirmance*—Justice LaVECCHIA—1.