# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 02-1024

———————

Carole Bendet; Joseph Bendet,    *
   *
       Appellants,    *
   *   Appeal from the United States
      v.    *   District Court for the Eastern
   *   District of Missouri.
Sandoz Pharmaceuticals Corporation,    *
   *
       Appellee.    *

———————

Submitted: September 13, 2002

Filed: October 22, 2002

———————

Before McMILLIAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and BOGUE,[1] District Judge.

———————

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Carole Bendet and Joseph Bendet brought this product liability action against Sandoz Pharmaceuticals Corporation (Sandoz), now known as Novartis Pharmaceuticals Corporation, when Ms. Bendet suffered a stroke after taking Parlodel, a postpartum lactation suppressant that Sandoz manufactured. The district

———————————

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

court granted summary judgment to Sandoz and the Bendets appeal. We reverse the judgment of the district court.

This case is one of a number of similar cases nationwide in which new mothers who took Parlodel to suppress postpartum lactation complain that Parlodel caused injuries ranging from heart attack to stroke. The Bendets' medical experts theorized that Ms. Bendet's ischemic stroke (where blood flow to the brain is restricted) resulted from vasospasm (a spasm or constriction of the blood vessels) induced by Parlodel. Sandoz filed a motion for summary judgment seeking to exclude the testimony of these experts under *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993). Because Sandoz had successfully excluded the testimony of two of those experts in another Parlodel case in the Eastern District of Missouri, *Glastetter v. Novartis Pharm. Corp.*, 107 F. Supp. 2d 1015 (E.D. Mo. 2000), the Bendets sought and received a stay of proceedings pending appellate review of that case.

In moving for the stay, the Bendets indicated to the district court that the *Glastetter* appeal would "presumably settle the dispositive *Daubert* evidentiary issues critical to [their] case." Although Ms. Bendet and Ms. Glastetter suffered different types of injuries, those medical experts common to their cases professed the same theory of causation in both cases. The district court in *Glastetter* had rejected the experts' assertions that Ms. Glastetter's hemorrhagic stroke (where too much blood enters the brain) resulted from vasospasm induced by Parlodel at the general causation level, finding that the experts had failed to produce scientifically convincing evidence that Parlodel causes vasoconstriction. *Glastetter*, 107 F. Supp. 2d at 1044-45. We affirmed this ruling in *Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986 (8th Cir. 2001) (*per curiam*).

Following our decision, Sandoz filed a motion in the Bendets' case for an order directing them to show cause why their case should not be dismissed in light of our ruling. In response, the Bendets requested that the district court continue the stay of

proceedings pending Ms. Glastetter's pursuit of further appellate remedies, or, alternately, that the district court "allow the *Daubert* briefing to proceed and consider the *Bendet* case on its merits before issuing any outcome determinative orders." The district court, stating that the parties had "essentially construed the motion [for an order to show cause] as one to dismiss or for summary judgment," and finding that the parties "had the opportunity to be fully heard on the issue," determined that our decision in *Glastetter* controlled the disposition of the Bendets' case and granted summary judgment based on the exclusion of the Bendets' evidence of causation.

I.

The district court, in deciding that our ruling in *Glastetter* controlled the disposition of the Bendets' case, relied in part on the Bendets' earlier representation that the Bendets' medical causation evidence was "essentially the same" as Ms. Glastetter's medical causation evidence. To the extent that the district court may have invoked the doctrine of judicial estoppel to preclude the Bendets from arguing that our analysis in *Glastetter* was not fatal their case, we believe that it was mistaken. Whether this diversity case is governed by the substantive law of New Jersey (as the Bendets suggest) or Missouri (as Sandoz suggests), under either state's law the doctrine of judicial estoppel is restricted to those instances where a party takes a position that is clearly inconsistent with its earlier position. *See Monterey Dev. Corp. v. Lawyer's Title Ins. Corp.*, 4 F.3d 605, 608-09 (8th Cir. 1993); *Edwards v. Durham*, 346 S.W.2d 90, 100-01 (Mo. 1961); *Ali v. Rutgers*, 166 N.J. 280, 287-88, 765 A.2d 714, 718 (2000).

No doubt, any confusion over whether judicial estoppel is appropriately invoked in this case stems in part from the Bendets' attempt to affiliate with Ms. Glastetter closely enough to obtain the stay, but not so closely as to lose control of their case. We think it significant, however, that the Bendets opposed, and the district court refused to grant, Sandoz's request that any stay be conditioned upon dismissal with prejudice if *Glastetter* were affirmed. In fact, the Bendets stated in

-3-

their reply to Sandoz's response to their motion for a stay that "it would be foolhardy on plaintiff's counsel's part to agree to any such dismissal without giving [the district court] the benefit of hearing the *Bendet* specific differential diagnosis testimony," and concluded that it would "[n]evertheless ... still ... be instructive for this [district court] to learn of the Eighth Circuit's view on this evidence." The Bendets also noted in their motion for a stay their belief that the district court could hear the evidence specific to ischemic stroke and in its discretion reach a different opinion than the district court had in *Glastetter*. Based on these statements, we cannot say that the Bendets' later opposition to the motion for an order to show cause is "clearly inconsistent" with their earlier position in support of the stay.

The doctrine of judicial estoppel operates to protect the integrity of the judicial process. *New Hampshire v. Maine*, 532 U.S. 742, 749-750 (2001). Where, as here, the district court expressly recognized the possibility that "some distinction may exist or arise" between the Bendets' case and *Glastetter*, the integrity of the judicial process is not undermined by permitting the Bendets an opportunity to argue that such a distinction in fact exists. We are not suggesting that *Glastetter* is irrelevant to the Bendets' case; we note merely that the Bendets are not judicially estopped from attempting to distinguish their case from Ms. Glastetter's.

## II.

Sandoz rejects, and we think rightly so, the Bendets' characterization of the district court's decision as an application of non-mutual collateral estoppel. Non-mutual defensive collateral estoppel works to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in another action against a different defendant. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.4 (1979). An essential requirement of non-mutual defensive collateral estoppel is that the plaintiff was a party to, or in privity with a party to, the prior adjudication. *See In re Estate of Dawson*, 136 N.J. 1, 20-21, 641 A.2d 1026, 1034-35 (1994); *James v. Paul*, 49 S.W.3d 678, 682 (Mo. 2001); *Nanninga v. Three Rivers Elec. Coop.*, 236

F.3d 902, 906 (8th Cir. 2000) (application of collateral estoppel in diversity cases determined according to state law). As the Supreme Court has explained, "Some litigants – those who never appeared in a prior action – may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim. Due process prohibits estopping them despite one or more existing adjudications of the identical issue which stand squarely against their position." *Blonder-Tounge Labs., Inc. v. University of Illinois Found.*, 402 U.S. 313, 329 (1971); *see also Holloway v. Lockhart*, 813 F.2d 874, 878 (8th Cir. 1987).

While the district court may have foreclosed, or perhaps short-circuited, litigation of the causation issue in the Bendets' case based on the adjudication of the causation issue in *Glastetter*, nothing in the district court's order leads us to believe that the district court based its decision on the doctrine of non-mutual collateral estoppel. We think, rather, that the district court relied on a combination of judicial estoppel and *stare decisis*. Setting to one side the doctrine of judicial estoppel (because we have already indicated that it is inapplicable here), we agree that if the Bendets were to rely on materially identical facts, supported by precisely the same evidence, to prove precisely the same causation theory that was rejected in *Glastetter*, the district court would be bound by our determination in *Glastetter*. "*Stare decisis* means that like facts will receive like treatment in a court of law." *Flowers v. United States*, 764 F.2d 759, 761 (11th Cir. 1985); *see also Imperial Stone Cutters, Inc. v. Schwartz*, 370 F.2d 425, 429 (8th Cir. 1966) ("precedents that cannot be distinguished should be followed"). Because the Bendets' causation evidence was not fully explored below, however, we cannot say that our decision in *Glastetter* foreclosed them. It would appear, it is true, that the Bendets proffer the same theory of general causation and rely on much the same evidence of causation as Ms. Glastetter did, but the Bendets indicate that they have additional evidence of causation, and we do not discount the possibility that stronger evidence of causation may exist than was presented in *Glastetter*. *See Glastetter*, 252 F.3d at 992. The district court should

have the opportunity to consider this evidence fully in addition to and in aggregation with the Bendets' other causation evidence, if any.

The district court, in finding that the Bendets had the opportunity to be fully heard on the causation issue prior to the dismissal of their case, relied heavily on the Bendets' decision, in responding to Sandoz's peculiarly styled "Motion for Order to Show Cause Why Case Should Not Be Dismissed in Light of Dispositive Ruling by the Eighth Circuit Court of Appeals," to come forward with what they represented was additional evidence to support their theory of causation. Sandoz urges us to view the Bendets' gratuitous attachment of excerpts from medical textbooks to their response, and the district court's subsequent grant of summary judgment, as comparable to a district court converting a motion to dismiss into a motion for summary judgment. *See* Fed. R. Civ. P. 12(b) ("If, on a motion ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment"). On reflection, however, and on the facts of this case, we conclude that the district court's action amounted to a *sua sponte* grant of summary judgment.

A district court may grant summary judgment *sua sponte* only if the "party against whom judgment will be entered was given sufficient advance notice and an adequate opportunity to demonstrate why summary judgment should not be granted." *Interco, Inc. v. National Sur.* Corp., 900 F.2d 1264, 1269 (8th Cir. 1990); *see also Coplin v. Fairfield Pub. Access Television Comm.*, 111 F.3d 1395, 1407 (8th Cir. 1997). We conclude that when the Bendets' response is placed in context with the procedural posture of their case, the nature of the relief requested by Sandoz's motion for an order to show cause, and the fact that a separate, more specific motion for summary judgment based on *Daubert* was pending and stayed, the record cannot support a conclusion that the Bendets had sufficient notice that the district court was

considering the case on its merits and that they should come forward with all of their causation evidence.

We think it significant that the district court's order staying the proceedings indicated that the Bendets' case was "stayed until further order of this [district court] pending the outcome of the [*Glastetter*] appeal," because no such order in fact was ever issued. Indeed, the first half of the Bendets' response to Sandoz's motion for an order to show cause is addressed to the need to continue the stay of proceedings pending the pursuit of further appellate remedies in *Glastetter*. We also note that Sandoz's motion for an order to show cause did not on its face purport to be a dispositive motion: Sandoz's motion instead asked that the district court direct the Bendets to make an evidentiary showing. The district court never issued that show cause order. Finally, when it initially entered the stay, the district court suspended briefing of Sandoz's motion for summary judgment under *Daubert*, in which Sandoz sought to exclude not only the evidence common with the *Glastetter* case, but also evidence particular to the Bendets' case (including an additional expert on causation). The Bendets' request, made in their response to the motion for an order to show cause, for an opportunity to respond to Sandoz's motion for summary judgment under Daubert if the stay were lifted, belies the assertion that the Bendets understood the motion for an order to show cause to be a dispositive motion, or had reason to believe that briefing on the causation issue had been fully revived.

III.

In sum, we think it prudent, on the unique facts of this unusually configured case, and where considerations of due process are involved, to allow the Bendets a clear opportunity to present their evidence of causation fully to the district court. We therefore reverse the district court's grant of summary judgment and remand for further proceedings not inconsistent with this opinion. Because we reverse the grant of summary judgment, we do not reach the issue of whether the district court erred

-7-

in denying the Bendets' motion to alter judgment pursuant to Fed. R. Civ. P. 59 and for relief from judgment pursuant to Fed. R. Civ. P. 60.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.