928 A.2d 126 (2007)
395 N.J. Super. 109
COMMERCIAL INSURANCE COMPANY OF NEWARK, Plaintiff-Appellant,
v.
Mary STEIGER, Individually and as Executrix of the Estate of David Steiger and Michael G. Natoli, Defendants-Respondents, and
Peerless Insurance Co. and Saab Scancia, Inc., Defendants.
Superior Court of New Jersey, Appellate Division.
Argued February 7, 2007.
Decided July 20, 2007.
*127 Jerald Howarth, Parsippany, argued the cause for appellant (Hahn & Howarth, attorneys; Mr. Howarth, on the brief).
Dennis G. Polizzi, Clifton, argued the cause for respondent Mary Steiger (Weiner, Ryan & Mazzei, attorneys; Mr. Polizzi, of counsel and on the brief).
Richard W. Gaeckle, New Brunswick, argued the cause for respondent Michael G. Natoli (Hoagland, Longo, Moran, Dunst & Doukas, attorneys; Andrew J. Carlowicz, Jr., of counsel; Louis A. Uccello and Craig M. Aronow, on the brief).
Before Judges A.A. RODRÍGUEZ, SABATINO and LYONS.
The opinion of the court was delivered by
A.A. RODRÍGUEZ, P.J.A.D.
This is an appeal brought by an insurer for a declaratory judgment. Three lawsuits arose from one fatal automobile accident. *128 Discussion of the three lawsuits, as well as the facts, is necessary for an understanding of the issues on appeal.
Early in the morning on July 22, 1996, decedent, David P. Steiger, was involved in a one-car accident on the New Jersey Turnpike. At the time, decedent was driving a 1994 Saab 9000, which was owned by decedent's employer, Sellinger and Sellinger, P.A. (Sellinger) and afforded Uninsured Motorist (UM) coverage pursuant to a policy issued by Commercial Insurance Company of Newark (Commercial). According to the police report, eyewitnesses Donald and Karen Goodman, reported that the decedent was preparing to exit the Turnpike at Exit 6. The Saab crossed over from the westbound lanes into the eastbound lanes and struck a tollbooth designated for traffic entering the Turnpike. The Saab flipped over and the airbag deployed. Decedent was pronounced dead shortly thereafter.
Mary Steiger, individually and as executrix of decedent's Estate (collectively "Estate"), sued Saab Scancia, Inc. on a "crash-worthiness" product liability theory. The Sellinger firm represented the Estate in the Saab action, which was venued in Bergen County.[1]
In October 2000, while the Saab action was pending, the Estate filed a verified complaint in Passaic County demanding that Commercial submit to UM arbitration. The Estate was represented in the UM action by Dennis G. Polizzi, Esq. Judge Scancarella entered an order on October 20, 2000, compelling UM arbitration. Commercial demanded discovery from the Estate and subpoenaed records from the Estate's attorney in the Saab action. Several months later, Commercial received a package of discovery from the Saab action. According to Commercial, nothing in that discovery suggested the existence of a UM claim.
Polizzi eventually provided discovery responses for the UM action, which included an expert report from Michael G. Natoli opining that the accident was caused by a "phantom vehicle." This was based on the existence of a paint transfer on the Saab.
In July 2002, the Saab lawsuit was settled. The Estate did not obtain Commercial's consent prior to settling the Saab litigation.
Commercial filed this declaratory judgment action in Bergen County to bar the Estate's claim for UM benefits. In addition, Commercial sued Natoli alleging material misrepresentation and sought a set-off from Saab.[2]
On January 30, 2004, the Estate answered and asserted a counterclaim alleging that Commercial "attempted to coerce and/or influence [Natoli] by filing suit directly against [him] seeking compensatory damages . . . even though [Natoli] is not in privity of contract with [Commercial]."
In the interim, the Estate moved in Passaic County to enforce the order compelling UM arbitration. Judge Scancarella denied the Estate's motion given the pending action in Bergen County.
Natoli moved for summary judgment. Judge Robert C. Wilson granted the motion. Commercial moved in Bergen County for summary judgment against *129 the Estate. The Estate cross-moved for summary judgment and sought to compel UM arbitration. Judge Wilson denied Commercial's motion and granted the Estate's cross-motion.
Commercial moved for reconsideration and dismissal of the counterclaim by the Estate. In a written opinion, Judge Wilson denied reconsideration, but granted a dismissal of the Estate's counterclaim with prejudice.

Dismissal of Claim Against the Estate
Commercial appeals from the dismissal of its complaint against the Estate contending that "the Estate's claim is barred by judicial and equitable estoppel." We disagree for several reasons. We begin our analysis by noting the judicial principles that limit the sweep of the judicial and equitable estoppel doctrines. Judicial estoppel is an extraordinary remedy that should be invoked only "`when a party's inconsistent behavior will otherwise result in a miscarriage of justice.'" Ali v. Rutgers, 166 N.J. 280, 288, 765 A.2d 714 (2000) (quoting Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 365 (3d Cir.1996)). For that reason, "[j]udicial estoppel is applied with caution to avoid impinging on the truth-seeking function of the court. . . ." Teledyne Indus., Inc. v. NLRB, 911 F.2d 1214, 1218 (6th Cir.1990). Therefore, "judicial estoppel should be invoked only in those circumstances required to serve its stated purpose, which is to protect the integrity of the judicial process." Ali, supra, 166 N.J. at 288, 765 A.2d 714 (quoting Kimball Int'l, Inc. v. Northfield Metal Prod., 334 N.J.Super. 596, 608, 760 A.2d 794 (App. Div.2000)).
In Ali, our Supreme Court summarized the doctrine of judicial estoppel:
The purpose of the judicial estoppel doctrine is to protect "the integrity of the judicial process." Cummings v. Bahr, 295 N.J.Super. 374, 387, 685 A.2d 60 (App.Div.1996). A threat to the integrity of the judicial system sufficient to invoke the judicial estoppel doctrine only arises when a party advocates a position contrary to a position it successfully asserted in the same or a prior proceeding. Chattin v. Cape May Greene, Inc., 243 N.J.Super. 590, 620, 581 A.2d 91 (App. Div.1990), aff'd o.b., 124 N.J. 520, 591 A.2d 943 (1991); Brown v. Allied Plumbing & Heating Co., 129 N.J.L. 442, 446, 30 A.2d 290 (Sup.Ct.), aff'd, 130 N.J.L. 487, 33 A.2d 813 (E. & A.1943); Bell Atl. Network Servs., Inc. v. P.M. Video Corp., 322 N.J.Super. 74, 95, 730 A.2d 406 (App.Div.), certif. denied, 162 N.J. 130, 741 A.2d 98 (1999) (footnote omitted).
[Id. at 287-88, 765 A.2d 714 (quoting Kimball Int'l, Inc., supra, 334 N.J.Super. at 608, 760 A.2d 794).]
Here, Commercial argues the Estate has taken "two inconsistent positions in two claims arising out of the same July 22, 1996 accident." Specifically, Commercial contends that in the Saab case, the Estate took the position that (1) "there was no other accident known or asserted as to why decedent deviated from his path and collided with the tollbooth;" and (2) "the sole cause of death was decedent's operation of an improperly designed, uncrashworthy vehicle." In the UM claim, the Estate takes the position that: (1) "a phantom vehicle caused the [Saab] to alter its travel . . . on the highway causing the accident;" and (2) the cause of death was the sole result of the "phantom vehicle" impacting the Saab and causing it to veer out of control. We are not persuaded by Commercial's argument because taking inconsistent positions in separate litigations is not per se prohibited. The Supreme Court has held that in order "`[t]o *130 be estopped, [a party must] have convinced the court to accept its position in the earlier litigation.'" Id. at 288, 765 A.2d 714 (quoting Kimball Int'l, Inc., supra, 334 N.J.Super. at 608, 760 A.2d 794). Thus, "a party is not bound to a position it unsuccessfully maintained." Ibid., In re Cassidy, 892 F.2d 637, 641 (7th Cir.), cert. denied, 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990).
Here, estoppel does not apply because in the Saab case, the Estate did not "convince the Court to accept its position." The Saab case was resolved by settlement during trial. See Kimball Int'l, Inc., supra, 334 N.J.Super. at 607, 760 A.2d 794 (noting that "[b]ecause the doctrine of judicial estoppel only applies when a court has accepted a party's position, a party ordinarily is not barred from taking an inconsistent position in successive litigation if the first action was concluded by a settlement") (citations omitted). In Kimball, we held that, "`[a] settlement neither requires nor implies any judicial endorsement of either party's claim or theories, and thus a settlement does not provide the prior success necessary for judicial estoppel.'" Id. at 608, 760 A.2d 794 (quoting Konstantinidis v. Chen, 626 F.2d 933, 939 (D.C.Cir. 1980)).
Furthermore, we agree with the Estate's argument, as did Judge Wilson, that judicial and equitable estoppel do not apply in this matter because the UM action was filed in October 2000 and the Saab litigation settled on July 1, 2002. Therefore, Commercial knew of the UM claim during the pendency of the Saab litigation and chose not to intervene. As the judge explained, "the UM claim axiomatically would give notice that there was a claim by the Estate that another motor vehicle was involved."
We also agree with the Estate's argument that the Saab litigation concerned only crashworthiness, therefore, "the Estate did not have to prove there was a first collision with a phantom vehicle or even how the accident happened." Given the nature of both lawsuits, there was no risk of inconsistent results. Id. at 607, 760 A.2d 794. For these reasons, we conclude that the Estate is not estopped from asserting the UM claim by virtue of the doctrines of judicial and equitable estoppel.
Commercial also contends that the UM claim is barred by the policy terms because the Estate failed to obtain consent to settle with Saab and to protect Commercial's right to subrogation pursuant to the policy. We disagree.
Commercial's policy provides in pertinent part:
This [UM coverage] does not apply to any of the following:
1. With respect to an "uninsured motor vehicle," any claim settled without our consent.
The quoted clause expressly applies solely to uninsured motor vehicles. Thus, an insured seeking UM benefits is not required to obtain consent from Commercial for any settlement with a products liability defendant.
The law governing coverage is codified in N.J.S.A. 17:28-1.1. Here, the Commercial policy is a "standard automobile insurance policy" as defined in N.J.S.A. 39:6A-2(n). The Supreme Court has held that "[t]he uninsured motorist statute was designed to provide maximum remedial protection to the innocent victims of financially irresponsible motorists and to reduce the drain on the financially-troubled Unsatisfied Claim and Judgment Fund." Riccio v. Prudential Prop. & Cas. Ins. Co., 108 N.J. 493, 503-04, 531 A.2d 717 (1987). Accordingly, in UM cases our courts have routinely rejected "any attempt by an insurer to restrict the liability on a UM *131 endorsement by way of the clause is repugnant to both the intent and meaning of the statute." Beek v. Ohio Cas. Ins. Co., 135 N.J.Super. 1, 5, 342 A.2d 547 (App.Div. 1975), aff'd o.b., 73 N.J. 185, 373 A.2d 654 (1977).
Here, the judge found that the Saab settlement:
[c]oncerned a product liability action against the vehicle manufacturer and therefore based on the language of the insurance company's own policy that language did not conspicuously nor distinctly address the issue of settling a product liability defect concerning an automobile accident but leads one to believe that it concerns only the settlement of a motor vehicle accident with other vehicles and other drivers and other insureds; therefore, I do not find that the settlement clause referred to in the insurance policy was applicable in this matter, so therefore I do not find that the separation of these two causes of action to be prejudicial nor to be governed by the entire controversy doctrine insofar as separate matters are being adjudicated.
We agree with this analysis. Moreover, the Saab settlement did not release any UM subrogation rights. Saab is not an uninsured tortfeasor nor the owner of an uninsured motor vehicle. Therefore, the Estate is not precluded from asserting the UM claim by virtue of the policy terms.
The remaining contentions by Commercial against the Estate are: (1) "the UM claim is barred based on breach of the policy as the claimant engaged in material misrepresentation, fraud, and concealment;" (2) "the claimant is not entitled to arbitration as there is no prima facie showing of negligence on the phantom;" and (3) "the policy herein does not mandate arbitration." We conclude that these arguments are without sufficient merit to warrant extended discussion in a written opinion. R. 2:11-3(e)(1)(A). We merely note that there has been no showing that the Estate or Natoli have engaged in fraud or misrepresentation. As discussed above, the Estate has not taken inconsistent positions in the Saab and present lawsuits. Whether Natoli's opinion is accepted or rejected is a matter for the arbitrator to decide. There is no basis to preclude the presentation of this claim to the arbitrator. However, in the event that the arbitrator finds that the UM claim has been proven, in order to avoid a double recovery, a credit should be given to Commercial for the amount of damages that the Estate has already received from Saab.

Dismissal of Claim Against Natoli
Commercial also appeals from the dismissal of its claim against Natoli. Commercial contends that a valid claim exists against Natoli pursuant to N.J.S.A. 17:33A-4. Commercial also argues that it did not have an opportunity to depose Natoli and this lack of discovery alone is a sufficient basis to reverse the order for summary judgment. We disagree with both arguments. First, we note that a witness is immune from liability. See Petty v. General Accident Fire & Life Assurance Corp., 365 F.2d 419, 421 (3d Cir. 1966) (noting that "New Jersey law recognizes that the immunity which attends judicial proceedings protects both counsel and other representatives who are employed to assist a party in the course of litigation.") (citations omitted). The New Jersey Supreme Court in Hawkins v. Harris, 141 N.J. 207, 216, 661 A.2d 284 (1995), dismissed plaintiff's claim against insurance investigators based upon the absolute privilege applicable to statements made during litigation. This litigation privilege "`extends to all statements or communications in connection with the judicial proceeding.'" Ibid. (quoting Ruberton v. Gabage, *132 280 N.J.Super. 125, 133, 654 A.2d 1002 (App.Div.1995)).
Moreover, Commercial alleges a tort against Natoli. However, he has not breached any duty owed to Commercial. In fact, he owes no duty at all to Commercial. This is so because a professional, such as Natoli, "only owes a duty to those persons who fall normally and generally within a zone of risk created by the tortious conduct and are therefore foreseeable." Commercial does not "`fall normally and generally within a zone of risk created by the tortious conduct.'" Sykes v. Propane Power Corp., 224 N.J.Super. 686, 691-92, 541 A.2d 271 (App.Div.1988) (quoting DiCosala v. Kay, 91 N.J. 159, 175, 450 A.2d 508 (1982)).
In Middlesex Concrete Products & Excavating Corp. v. Carteret Indus. Ass'n, 68 N.J.Super. 85, 172 A.2d 22 (App.Div.1961), we held that "[e]ven actual malice does not affect the absolute immunity provided the statement is made in the course of judicial proceeding and has some relation thereto." Id. at 91, 172 A.2d 22 (citing Rainier's Dairies v. Raritan Valley Farms, 19 N.J. 552, 117 A.2d 889 (1955)).
Here, Natoli's report opining that a "phantom vehicle" was a contributing cause of the accident, was clearly "pertinent and relevant to the litigation" and was prepared for trial. Id. at 92, 172 A.2d 22. Therefore, Natoli is immune from liability pursuant to the litigation privilege.
Affirmed.
NOTES
[1] Subsequently, the firm of Tompkins, McGuire and Wachenfeld represented the Estate in the Saab action.
[2] Commercial also sought a pro rata contribution from Peerless Insurance Company (Peerless), a Vermont insurer that had issued a liability policy insuring decedent and Mary Steiger, while they lived in Vermont, with respect to a 1992 Jeep Cherokee. The claim against Peerless was dismissed on summary judgment.