UNITED STATES of America, Plaintiff,

v.

Robert William MONTGOMERY, Defendant.

No. 2:03–CR–801 TS.

United States District Court, D. Utah, Central Division.

July 8, 2004.

David B. Oliver, Bradley P. Rich, Yengich, Rich & Xaiz, Salt Lake City, UT, for Defendant.

Ryan Douglas Robinson, Michelle Wickham, U.S. Attorney, for Plaintiff.

*MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO RECONSIDER AND VACATING UPWARD DEPARTURE, PURSUANT TO BLAKELY V. WASHINGTON*

STEWART, District Judge.

This matter is before the Court on Defendant's Motion to Reconsider, filed June 29, 2004. The government responded on July 8, 2004.

On June 22, 2004, the Court issued a Memorandum Decision and Order Granting Government's Motion for Upward Departure and Denying Defendant's Motion for Downward Departure[1] (the Court's June 22, 2004 Order), wherein the Court

---

1. The Court's denial of Defendant's Motion for Downward Departure is not before the Court and is unaffected by the Court's ruling herein.

departed upward two levels from the otherwise-applicable guideline sentence, based upon a factual finding that USSG § 5K2.1 applied to this case. Two days later, on June 24, 2004, the United States Supreme Court issued its decision in *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403, 2004 WL 1402697 (2004), invalidating a sentence imposed under the State of Washington's sentencing regime that upwardly departed based upon judicial findings of fact in support thereof, in violation of the Sixth Amendment.

After careful consideration of *Blakely,* and the issues presented in this case, the Court will grant Defendant's Motion to Reconsider, vacate its June 22, 2004 Order, and sentence Defendant in accordance with the sentencing guidelines, as set forth in the presentence report previously prepared in this case.

### DISCUSSION

### I. BACKGROUND

On October 8, 2003, Defendant was charged in a single-count Indictment with Felon in Possession of Firearms and Ammunition. On February 18, 2004, Defendant pleaded guilty, admitting the elements of the indicted violation.[2]

In granting the government's Motion for Upward Departure, the Court applied

USSG § 5K2.1, which provides for an upward departure in the guideline range "[i]f death resulted" from the defendant's conduct. The Court held an evidentiary hearing on June 10, 2004, and heard testimony and received evidence relating to the Motion. Thereafter, in its written June 22, 2004 Order, the Court made the factual finding that the death of Defendant's wife resulted from Defendant's illegal possession of a firearm, as a convicted felon, in combination with certain other aggravating factors. The factual findings relied upon by the Court in support of its two level upward departure were not admitted by Defendant, nor were they found by a jury. Further, those facts were found only by a preponderance of the evidence, and were not based solely on the fact of a prior conviction.

### II. *BLAKELY* AFTERMATH

As a preliminary matter, the Court notes that the Supreme Court stated in *Blakely* that "[t]he Federal Guidelines are not before us, and we express no opinion on them." *Id.* at 2538, n. 9. However, *Blakely's* effect upon federal sentencing is unavoidable. The Court notes that the statutory framework of the sentencing regime employed by the State of Washington is substantially similar to the federal sentencing guidelines. Although the Wash-

---

**2.** The facts stipulated to by the Defendant in the Statement by Defendant in Advance of Plea of Guilty, dated February 18, 2004, are as follows:

On or about September 3, 2003, in the Central Division of the District of Utah, I knowingly possessed in and affecting interstate commerce, firearms and ammunition, to wit, a Keltech 9mm pistol, a Ruger .357 revolver, a High Standard .22 pistol and associated ammunition; all in violation of 18 U.S.C. § 922(g)(a)(1).

The firearms referenced above and listed in the Indictment was [sic] not manufactured in the state of Utah. By virtue of its [sic] presence in the state of Utah, it [sic]

has traveled in and affecting [sic] interstate commerce within the meaning of 18 U.S.C. § 921(a)(2).

I have previously been convicted of a felony offense, punishable by imprisonment for more than one (1) year.

Specifically, on or about September 3, 2003, the firearms listed above were recovered in my home in Washington County, Utah. I knew that the above listed firearms were stored in my home, and I had access to them. On January 6, 2000, I entered a guilty plea to the Manufacture of an Unlawful Telecommunication Device, which is a felony offense.

ington state sentencing regime at issue is based solely on statutes (as opposed to a separate guidelines mechanism), those state statutes are similar to the federal sentencing guidelines, which are authorized and regulated by statute, as found in 18 U.S.C. § 3553. As is similar in the Washington statute, the federal statute, at § 3553(b), requires that "the court *shall* impose a sentence of the kind, and within the [guideline] range . . . unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described" (emphasis added).[3] The Court finds that, for purposes of the *Blakely* analysis, there is no meaningful difference between the sentencing regime employed by the State of Washington, and the federal sentencing guidelines at issue here.

The Supreme Court's reasoning under the Sixth Amendment, and the context in which such reasoning was applied, are applicable to this Court's sentencing of federal criminal defendants. Indeed, federal district courts nationwide have reached the same conclusion, and are scrambling, with various outcomes, to navigate their criminal dockets, post-*Blakely. See, e.g., United States v. Shamblin,* 323 F.Supp.2d 757, 2004 WL 1468561 (S.D.W.Va.2004); *U.S. v. Croxford,* 2004 WL 1462111 (D.Utah 2004).

The Sixth Amendment to the United States Constitution provides that

In all criminal prosecutions, the accused shall enjoy the right to a speedy and a public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which dis-

trict shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witness in his favor, and to have the Assistance of Counsel for his defence.

The Supreme Court in both *Blakely* and *Apprendi* affirmed "the need to give intelligible content to the right of jury trial. That right is no procedural formality, but a fundamental reservation of power in our constitutional structure." *Blakely,* at 2538.

*Apprendi* stood for the proposition that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. 2348. It was commonly understood that there was a distinction between the statutory maximum, as defined by the criminal statute implicated, and the maximum sentence provided for by the sentencing guidelines. Under the sentencing guidelines, district courts were given the discretion to make factual findings, by a preponderance of the evidence, to support departures and enhancements—both upward and downward—from the starting guideline range. In no case could a guideline sentence exceed the maximum sentence prescribed by the criminal statute.

The Supreme Court has now explained that the term "statutory maximum" refers to the maximum sentence provided by the sentencing regime, *before* any additional judicial findings are made—which are not admitted by Defendant or found ·by a jury—which would serve to

---

**3.** Further, § 3551 requires that a defendant "who has been found guilty of an offense described in any Federal statute . . . *shall* be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in [§ 3553] to the extent they are applicable in light of all the circumstances of the case" (emphasis added).

increase the guideline range. *Blakely* made it absolutely clear that the " 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant* ... In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Blakely*, at 2537 (emphasis in original). *See also Ring v. Arizona*, 536 U.S. 584, 592–93, 122 S.Ct. 2428, 153 L.Ed.2d 556 (a defendant's Sixth Amendment rights were violated when a judge imposed a sentence greater than the maximum he could have imposed under state law without the challenged factual finding). This ensures that "the judge's authority to sentence derives wholly from the jury's verdict," respecting a defendant's Sixth Amendment rights. *Blakely* at 2539. This Court holds that the rule announced in *Blakely* is applicable to the federal sentencing guidelines, which are made binding on this Court by statute. *See e.g.*, 18 U.S.C. §§ 3551, 3553.

It is worth noting that the Supreme Court in *Blakely* did not declare the State of Washington's sentencing regime unconstitutional. *Blakely* merely reversed the judgment of the state court and remanded for further consistent proceedings. *Id.* at 2551. In contrast, in both *Apprendi* and *Ring*, the Supreme Court declared the state statutes at issue unconstitutional. The Court finds significant that the Supreme Court refrained from the opportunity to strike the state statute under its Sixth Amendment analysis but, instead, only found the upward departure based upon judicial fact-finding unconstitutional. Further, in the post-*Apprendi* case of

*Harris v. United States*, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), the Supreme Court declined the opportunity to overturn the federal sentencing guidelines.[4] This lends additional credence to the Court's ruling herein that the federal sentencing guidelines, themselves, do not run afoul of the Sixth Amendment. The problem lies in upward enhancements and departures, and their accompanying lack of a citizen jury "check," and the lack of application of the otherwise-required heightened standard of proof (beyond a reasonable doubt) that would be required in that setting.

■ Having said that, the Court concurs with the assessment that there are three basic options facing federal district courts: "(1) the court could convene a sentencing jury, which would determine (presumably by proof beyond a reasonable doubt) whether the facts underlying the enhancement could be proven; (2) the court could continue to follow the other sections of the Guidelines apart from the defective upward enhancement provision; or (3) the court could treat the Guidelines as unconstitutional in their entirety in this case and sentence [the defendant] between the statutory minimum and maximum." *Croxford*, at *9.

The Court considers adherence to the first option to be unauthorized and practically unworkable. The difficulties presented by this option are thoroughly and thoughtfully set forth in *Croxford* at *10–11, and will not be further analyzed here.

Further, it is the opinion of this Court that the mechanism born from the third option is incompatible with *Blakely*. Under the third option, when a *Blakely*-implicated enhancement is raised, a court would declare that the entire guidelines—includ-

<hr/>

4. The Supreme Court in *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), upheld the constitutionality of the federal sentencing guidelines. How-

ever, that decision was based upon separation of powers principles and did not deal with the Sixth Amendment issues espoused in *Blakely* and before the Court here.

ing the core guideline range—are inapplicable as unconstitutional. A court would then make factual findings on all relevant issues, including sentence-enhancing factors in violation of *Blakely*. As noted in *Croxford*, "the irony is that after *Blakely*, this court is free to consider the same evidence which, under the unconstitutional Guidelines scheme, would have had to be proven to a jury beyond a reasonable doubt—including evidence of obstruction of justice and multiple victims." *Id.* at *13. In essence, the court would be saying with its mouth that it acknowledges *Blakely's* affect on federal criminal sentencing while, with its hand, demonstrating a practical disregard for it.

The actual result of utilizing option three would be to ignore the constitutional impact of *Blakely* and to conduct a fiction that a sentence should be at a specific level, having arrived there by the same unconstitutional steps *Blakely* expressly forbade. In sum, the third option would accomplish precisely what *Blakely* sought to preclude, by allowing judicial determination of the same fact-driven enhancements and departures to achieve the same sentence as would have applied pre-*Blakely* (albeit now with the minimum and maximum sentences defined by the criminal statute, rather than the federal sentencing guidelines).

■ Consequently, this Court will adopt the second option, and will continue to apply the sentencing guidelines, but without additional fact-finding by the Court that might result in an upward enhancement or departure that would result in a sentence above that which would otherwise apply under the guidelines, absent those findings. The Court wishes to clarify, however, that enhancements may be constitutionally appropriate under *Blakely* if they are based upon facts admitted by Defendant or found by a jury, or if based upon the fact of a prior conviction. *See*

*Apprendi v. New Jersey*, 530 U.S. 466, 476, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

It is this Court's experience that *Blakely*-implicated enhancement cases are among a small minority of cases. Therefore, the Court's decision herein—and, indeed *Blakely* itself—applies only to a narrowly defined set of cases and does not affect the majority of criminal cases before the Court to be sentenced under the guidelines.

■ The Court believes that adopting this approach is consistent with both the letter and the spirit of *Blakely*, and will ultimately best serve the purposes of protecting Defendant's Sixth Amendment rights, as those rights have been interpreted by the Supreme Court in *Blakely* and its predecessors. It is also consistent with the clearly established and long-held tenet that, when an aspect of a statute is held to be unconstitutional, the Court must try to preserve as much of the statute as is constitutionally permissible. Indeed, the Supreme Court has stated that "[t]he cardinal principle of statutory construction is to save and not to destroy." *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 30, 57 S.Ct. 615, 81 L.Ed. 893 (1937). The Tenth Circuit has also set forth guiding "mechanisms" to "preserve wholesale invalidation," including a court's finding that " 'that which is constitutional may stand while that which is unconstitutional will be rejected.' " *Citizens for Responsible Government State Political Action Committee v. Davidson*, 236 F.3d 1174, 1194 (10th Cir.2000)(citing *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 502, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985)).

As noted in *Shamblin*, despite the artificial applications that may result from applying the guidelines after *Blakely*, "[n]evertheless the Guidelines are the *law* which bind this court in sentencing matters, and to the extent that the Guidelines can be applied in a manner consistent with the

Sixth Amendment, the court shall strive to do so." *Shamblin,* at \*8 (citing *Blakely,* at 2545. ("This case is not about whether determinate sentencing is constitutional, only about how it can be implemented in a way that respects the Sixth Amendment.")).

The Court does not believe its adherence to the approach set forth herein unfairly disadvantages the government. The government maintains numerous effective tools for the prosecution of criminal cases to permit appropriately severe sentences. The government has the ability to seek to include in an indictment all of the elements that it believes are relevant and necessary to obtain an enhanced sentence for a particular individual. If the government subsequently discovers evidence warranting a more severe sentence, it may seek to supersede the indictment. At trial, the government may seek to include in the verdict form submitted to the jury, a specific finding on any fact alleged in the Indictment that would be necessary to support the need for an enhanced sentence—a procedure quickly and effectively adopted for certain drug quantities after *Apprendi.*

Similarly, the government may include in the plea agreement any sentence-enhancing fact that it believes appropriate. The government, as noted in *Blakely* itself, may offer or require a defendant to waive his or her *Apprendi/Blakely* rights as a condition of plea. *Blakely,* at 2547. As with any offer of a plea agreement, a defendant is then free to either agree to plead based on an admission of those facts or to proceed to a jury trial where the government must prove those facts. Indeed, *Blakely* set forth numerous options for the government, and the Department of Justice has set about developing methods for pursuing criminal prosecution, post-*Blakely.*

Thus, the government is no more disadvantaged in applying *Blakely* to the federal sentencing guidelines than it was in applying *Apprendi* to the guidelines. If this application of the guidelines alters the careful balance of the guidelines, that is a matter to be addressed by Congress and the Sentencing Commission.

Further, even if the option adopted by the Court were perceived to disadvantage the government, the Court would note that the protections mandated by the Sixth Amendment are for the benefit of the individual, not the government.

## III. APPLICATION OF *BLAKELY* TO THE FACTS OF THIS CASE.

■ While distinguishable, the Supreme Court in *Blakely* specifically noted a possible scenario of a judge sentencing a defendant "for committing murder even if the jury convicted him only of illegally possessing the firearm used to commit it," as an example of what might happen if *Apprendi* were not properly applied. *Blakely,* at 2543. In this case, Defendant has only admitted, in his plea agreement, to facts supporting the charge of Felon in Possession of Firearms and Ammunition (see above). The elements to support the Court's previously imposed upward departure, based on a resultant death, were not alleged in the Indictment, pleaded to by Defendant, or found by a jury.

The facts found by the Court in its June 22, 2004 Order, were facts that "increas[ed] the penalty for [the] crime beyond the prescribed statutory maximum," as that term has been defined by *Blakely* (see discussion above), and, therefore, such a fact must be admitted by Defendant or "submitted to a jury, and proved beyond a reasonable doubt" to square with the tenets set forth in *Apprendi, Ring,* and *Blakely. See Blakely* at \*2537–38; *Apprendi* at 490, 120 S.Ct. 2348. Therefore, those facts were improperly found by this Court and must be vacated.

*CONCLUSION*

Based upon the above, it is hereby

ORDERED that Defendant's Motion to Reconsider is GRANTED; it is further

ORDERED that the Court's June 22, 2004 Order is VACATED; it is further

ORDERED that Defendant shall be sentenced according to the guideline range determined in the presentence report prepared in this case. Sentencing will proceed as scheduled on July 12, 2004.

SO ORDERED.