**UNITED STATES of America, Plaintiff,**

v.

**Adrian L. SWAN, Defendant.**

**No. 8:03CR570.**

United States District Court, D. Nebraska.

Aug. 2, 2004.

Christian A. Martinez, Assistant United States Attorney, Omaha, NE, for Plaintiff.

Karen M. Shanahan, Federal Public Defender's Office, Omaha, NE, for Defendant.

## MEMORANDUM OPINION

BATAILLON, District Judge.

Defendant Adrian Swan is before the court for sentencing. The defendant entered a plea of guilty to the indictment on May 4, 2004. Filing No. 13.

### I. FACTS

The defendant was indicted for a violation of 18 U.S.C. § 922(g)(1), possession of firearms and ammunition by a felon. The indictment asserted that Swan "having been convicted ... of Attempted Robbery," "did knowingly possess ... a Smith and Wesson, Springfield, MA, 9 mm semiautomatic, model 669, serial number TAE6027 which had been shipped and transported in interstate and foreign commerce." Filing No. 1, Indictment at 1.

That crime is punishable by a maximum term of incarceration of up to ten years. 18 U.S.C. § 922(g); 924(a).

In his petition to enter a plea of guilty, the defendant states that his reason for entering the plea is that "it is in my best interest." Filing No. 15, Petition at 12. To establish a factual basis for the plea, the defendant indicates, "on the date listed in the indictment I was in possession of a firearm I have one previous felony conviction." *Id.* at 14.

Under the plea agreement, the defendant agreed to enter a plea to the indictment and the United States ("the government") agreed to make a non-binding recommendation at sentencing that the defendant be given the benefit of his acceptance of responsibility and that the court impose sentence at the low end of the applicable guidelines imprisonment range. Filing No. 16, Plea Agreement at 1. The court accepted the plea, but deferred approval of the plea agreement pending review of a presentence investigation report ("PSR") by the United States Office of Probation ("Probation"). Probation prepared a PSR, calculating defendant's sentence under the United States Sentencing Guidelines ("guidelines"). The U.S. Attorney representing the government stated on the record at the sentencing hearing that the government adopted the findings set out in the PSR. Filing No. 48.

In the PSR, under the heading "Offense Conduct," Probation related the prosecutor's version of events, noting that Swan was pulled over for running a stop-sign and ticketed for lacking proof of insurance and that when the car was searched, a weapon was found. Probation identified defendant's base offense level as twenty under the guideline section that provides for that base offense level if the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense. U.S.S.G. § 2K2.1(a)(4)(A). That calculation was based on defendant's previous conviction of attempted robbery. Probation then added two points under U.S.S.G. § 2K2.1(b)(4) because the firearm was stolen. Probation then subtracted three points for the defendant's acceptance of responsibility under U.S.S.G. § 3E1.1, resulting in a total offense level of 19.

Under criminal history, the defendant was assessed two criminal history points under U.S.S.G. § 4A1.1(c) for sentences for theft and possession of marijuana, one point under U.S.S.G. § 4A1.1(c) for attempted robbery, and two points under U.S.S.G. § 4A1.1(d), for committing the instant offense while under a sentence of probation for the attempted robbery. Accordingly, Probation determined the defendant's criminal history category to be III. The resultant sentencing range, based on a total offense level of nineteen at criminal history category III, was thirty-seven to forty-six months.

Defendant objects to the PSR calculation, contending his proposed guideline sentence is unconstitutional. Filing No. 17. He contends that the sentencing guidelines are wholly unconstitutional and that he should be sentenced to an indeterminate sentence. Alternatively, he contends that the guidelines are unconstitutional as applied to him because enhancements for a prior conviction of a crime of violence and for a stolen weapon are not supported by facts that to which he admitted in his plea agreement. At the sentencing hearing, defendant moved for a downward departure based on the contention that the criminal history category of III over-represented his criminal history, under U.S.S.G. § 4A1.3.

## II. DISCUSSION

The United States Supreme Court recently decided *Blakely v. Washington*, ── U.S. ──, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), which has an impact on this case. In that case, the Court invalidated a sentence imposed under the State of Washington's sentencing regime. *Id.* at 2544. The Court found that increasing a defendant's sentence beyond the maximum that could have been imposed absent the finding of a particular fact by the sentencing judge violates the Sixth Amendment. *Id.* at 2538. Subsequently, in reliance on *Blakely*, the Eighth Circuit Court of Appeals has now found the sentencing guidelines wholly unconstitutional. *United States v. Mooney*, No. 02–3388, 2004 WL 1636960 at *12 (8th Cir. Jul 23, 2004) (Judges Lay and Bright, additional opinion).

In *Mooney*, the court "adopt[ed] the careful and wise remedy of Judge Cassell, announced in *United States v. Croxford*, 2004 U.S. Dist. LEXIS 12156 at (D. Utah June 29, 2004) (holding the guidelines wholly unconstitutional and granting the sentencing court the exercise of discretion within the statutory maxima and minima, using the guidelines as advisory but not necessarily binding)." *Mooney*, 2004 WL 1636960 at *13.

Under principles of stare decisis, decisions of the Eighth Circuit Court of Appeals have precedential value and must be followed by the district courts within the Eighth Circuit. *See Bendet v. Sandoz Pharmaceuticals Corp.*, 308 F.3d 907, 911 (8th Cir.2002); *Arthur Young & Co. v. Reves*, 856 F.2d 52, 56 (8th Cir.1988) (Arnold, J., dissenting), *rev'd on other grounds*, 494 U.S. 56, 110 S.Ct. 945, 108 L.Ed.2d 47 (1990) (stating that stare decisis applies to courts at the same or a lower level in a single hierarchical system). Nevertheless, the court finds it is not bound to follow *Mooney* at this time, since the appeals court decision is not yet final. Stare decisis is similar to the doctrines of res judicata and collateral estoppel, which require a final judgment, although stare decisis does not draw its force from the policy that protects final judgments. Instead, stare decisis "stems from the principles of stability and equal treatment underlying the orderly development of legal doctrine." 18 James Wm. Moore, *et al.*, Moore's Federal Practice § 131.13[3] (3d ed.2004). *See, e.g., Vasquez v. Hillery*, 474 U.S. 254, 265, 106 S.Ct. 617, 88 L.Ed.2d 598 (noting that the policy behind stare decisis is to "ensure that the law will not merely change erratically, but will develop in a principled and intelligible fashion," which "permits society to presume that bedrock principles are founded in the law rather than in the proclivities of individuals"). In circumstances such as these, the court finds that principles of stare decisis require restraint in the use, as precedent, of a decision that is not yet final.

"A Court of Appeals' judgment or order is not final until issuance of the mandate, at that time the parties' obligation becomes fixed." Fed. R.App. P. 41(c) advisory committee's note, 1998 amendment; Fed. R.App. P. 35(c) advisory committee's note, 1998 amendment (noting deletion of language in the earlier rule indicating that "a request for rehearing en banc does not affect the finality of the judgment or stay the issuance of the mandate"). *See also Missouri v. Jenkins*, 495 U.S. 33, 45, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990) (holding under pre-amendment Fed. R.App. P. 35 and 40 that a timely petition for rehearing suspends the finality of the court's judgment). In view of the significance of the *Blakely* decision and the uncertainty it has created, it is likely that a petition for rehearing under either Rule 35 (rehearing by the court en banc) or Rule 40 (rehearing by the panel) will be filed. The parties have fourteen days from July 23, 2004, in

which to file such a petition, which would automatically stay the mandate. *See* Fed. R.App. P. 40(a)(1); 41(d)(1). Absent the timely filing of a petition for rehearing, "the court's mandate must issue 7 calendar days after the time to file a petition for rehearing expires." Fed. R.App. P. 41(b).

Accordingly, until the mandate in *Mooney* issues, this court is not obliged to follow the dictates of the *Mooney* decision. Until such time as the *Mooney* decision becomes a final judgment accorded precedential effect, this court is compelled to apply its own understanding of the Supreme Court's holding in *Blakely*. *See Hutto v. Davis*, 454 U.S. 370, 375, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982) (stating that Supreme Court precedent must be followed by lower federal courts). This court remains convinced that the proper reading of *Blakely* would allow a court to follow the guidelines as long as factors increasing the "maximum," as defined in *Blakely*, are charged in the indictment and either admitted or submitted to a jury (or the court if a jury is waived) under the standard of proof beyond a reasonable doubt. *See United States v. Terrell*, No. 8:04–CR–24, 2004 WL 1661018 (D.Neb. July 22, 2004).

The court believes the Eighth Circuit's adoption of U.S. District Judge Cassell's rationale as set forth in *Croxford*, at 1244–46, is untenable and may not withstand scrutiny on review. In *Croxford*, the court rejected the option of "continu[ing] to follow the other sections of the guidelines apart from the defective enhancement provisions," because it found the guidelines were not severable. *Id.* at 1244. The court's nonseverability analysis was premised on the finding that "[a]pplying only the *Blakely*-proof portions of the guidelines would hardly square with [the core purposes of the Sentencing Reform Act]." [1] *Id.* The court characterized the option as it as "a one-sided approach" in which the defendant "would benefit from downward adjustments, but would not face upward adjustments." *Id.* at 1244. That reasoning is flawed for the reasons set out in *Terrell*, 2004 WL 1661018 at *5 n. 3, and because the concept of "unfairness to the government" lacks any foundation in either law or history.

The protections mandated by the Sixth Amendment are for the benefit of the individual, not the government. *See United States v. Montgomery*, 324 F.Supp.2d 1266, 1271 (D.Utah 2004). Reliance on "unfairness to the government" as a rationale is akin to the assertion that it is not fair to require the government to prove every element of its case. Just as it is perfectly fair not to require a defendant to prove his innocence beyond a reasonable doubt, while the government is required to prove his guilt by that standard, it is perfectly fair to permit mitigating sentencing factors to be proved by a preponderance of evidence, without a jury, while requiring aggravating factors to be established by a jury beyond a reasonable doubt. *See Terrell*, 2004 WL 1661018 at *5 n. 3; *Montgomery*, at 1271.

The court finds no disadvantage to the government in the adoption of the approach outlined in *Terrell*, 2004 WL 1661018 at *5; *see also Booker*, 375 F.3d 508, 512; *Montgomery*, at 1271 (D.Utah 2004). "The government maintains numerous effective tools for the prosecution of criminal cases to permit appropriately severe sentences." *Montgomery*, at 1271. The government can indict an individual on

---

1. The court listed as core purposes: "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense as well as to afford adequate deterrent to criminal conduct and to protect the public from further crimes of the defendant." *Croxford*, at 1245.

all of the elements necessary to obtain an enhanced sentence, and can supersede the indictment if it subsequently discovers evidence that would warrant a more severe sentence. *See id.* At trial, jury resolution of enhancing factors can be remedied by their inclusion in a special verdict form—a procedure quickly and effectively adopted for certain drug quantities after *Apprendi.* *See id.* Similarly, the government may include in the plea agreement any sentence-enhancing fact that it believes appropriate. *Id.* Also, the government may include appropriate waivers as part of plea agreements. *See Blakely,* —— U.S. at ——, 124 S.Ct. at 2541; *Terrell,* 2004 WL 1661018 at *5 n. 3. As with any other offer of a plea agreement, a defendant is then free to either agree to plead based on an admission of those facts or to proceed to a jury trial where the government must prove those facts. *See Montgomery,* at 1271; *Terrell,* 2004 WL 1661018 at *5 n. 3. Thus, the government will be no more disadvantaged in applying *Blakely* to the federal sentencing guidelines than it has been in applying *Apprendi* to the guidelines.

Accordingly, the court will proceed to sentence defendant under the principles announced in *Blakely,* as interpreted by this court in *Terrell.* *Id.,* 2004 WL 1661018 at *5–6.

## III.  APPLICATION TO THIS CASE

■ The defendant has admitted to being a felon in possession of a firearm. The indictment, as well as the PSR, state that he was previously convicted of attempted robbery. The court's analysis of an issue relating to a prior conviction is generally outside the ambit of *Blakely* because the enhancement deals with recidivism. *See Blakely,* 124 S.Ct. at 2536 (2004) (reaffirming *Apprendi's* exception for "the fact of a prior conviction"). In this case, it is clear that Swan's sentence can be enhanced for prior conviction of a "crime of violence."

See U.S.S.G. § 2K2.1(a)(4)(A), cmt. n. 5; 4B1.2, cmt. n. 1. Because it was charged in the indictment, defendant's plea to the indictment encompasses admission of the fact that his previous felony conviction was for attempted robbery. The determination of whether attempted robbery amounts to a crime of violence is a question of law based on these admitted underlying facts. See, e.g., *United States v. Wright,* 340 F.3d 724, 735 (8th Cir.2003) (reviewing interpretation of guidelines de novo).

■ The Sentencing Guidelines prescribe a base offense level of 20 if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(4)(A). The term "crime of violence" for purposes of application of U.S.S.G. § 2K2.1(a)(4)(A) is defined in U.S.S.G. § 4B1.2(a) as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—(1) has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a). Under Nebraska law, use of force is an element of robbery. *See* Neb.Rev.Stat. § 28–324 ("A person commits robbery if, with the intent to steal, he forcibly and by violence, or by putting in fear, takes from the person of another any money or personal property of any value whatever."). Moreover, robbery is specifically listed in the guideline commentary as a crime of violence. U.S.S.G. § 4B1.2, comment. (n.1). A "crime of violence" includes the offenses of aiding and abetting, conspiring, and attempting to commit such offenses. *Id.*

■ The government concedes that Swan was not indicted for possession of a stolen weapon, nor did he admit that fact. To increase Swan's sentence in reliance on the fact of the stolen gun would violate

Swan's constitutional rights under *Blakely.* Accordingly, the court finds that the facts that support defendant's conviction establish that his base offense level should be twenty under U.S.S.G. § 2K2.1(a)(6), and that three points should be subtracted for acceptance of responsibility under U.S.S.G. § 3E1.1, resulting in an offense level of seventeen.

■ At sentencing, Swan moved for a downward departure because the criminal history category outlined in the PSR score over-represents the seriousness of his crimes. Under U.S.S.G. § 4A1.3, comment. (backg'd.), a departure is warranted in "cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes." U.S.S.G. § 4A1.3, comment. (backg'd.). In such a case, "[t]he court may conclude that the defendant's criminal history was significantly less serious than that of most defendants in the same criminal history category ... and therefore consider a downward departure from the guidelines." *Id.* The guidelines anticipate such departures "[i]In recognition of the imperfection of this measure [the maximum term imposed in a previous sentence]," noting that " § 4A1.3 permits information about the significance or similarity of past conduct underlying prior convictions to be used as a basis for imposing a sentence outside the applicable guideline range." *Id.* at U.S.S.G. § 4A1.1, comment., (backg'd.). *See also United States v. Senior*, 935 F.2d 149, 150–51 (8th Cir. 1991) (affirming downward departure raised by court on its own motion); *United States v. Greger*, 339 F.3d 666, 671 (8th Cir.2003).

■ In departing downward, the court can consider the historical facts of a defendant's criminal career, including his age when he committed the offenses, the proximity in time of the convictions, and "the state's assessment of the seriousness of [defendant's] crimes as reflected by the state courts' handling of sentencing." *Id.* at 151. In departing, the court should apply the guideline range that would have applied absent the overstatement of his criminal history. *Id.*

Several things justify departure in this case: Defendant was sentenced to six months for criminal mischief at age sixteen. Ordinarily points are not assessed for juvenile adjudications unless they are imposed within five years of the commencement of the instant offense. *See* U.S.S.G. § 4A1.2(d)(2)(B). Another point was assessed for possession of marijuana, less than an ounce, for which a $100.00 fine was assessed in state court. Possession of less than an ounce of marijuana is an infraction under Nebraska law. *See* Neb. Rev.Stat. § 28–416(13)(a). Although the Eighth Circuit has held that a conviction for possession of less than an ounce of marijuana should be counted in calculating criminal history score, *United States v. Jenkins*, 989 F.2d 979, 979–80 (8th Cir. 1993), the state of Nebraska's treatment of the offense can nevertheless be considered in the context of the over-representation analysis. Defendant's other criminal history points were all assessed in connection with his sentence for attempted robbery. Although attempts count under the Sentencing Commission's definition of prior offenses, *see* U.S.S.G. § 4B1.2, comment. (n.1), the fact that the offense was an attempt, which is punished less severely under state law, *see* Neb.Rev.Stat. § 28–201(4) (attempt is classified as lower level felony than the actual crime attempted would be), lends support to a *downward* departure under U.S.S.G. § 4A1.3.

Accordingly, for these reasons and for the reasons stated on the record at the sentencing hearing, the court finds placing

Swan in criminal history category II more closely represents the seriousness of his crimes and the likelihood that he will commit crimes in the future. An offense level of seventeen at criminal history category II yields a sentencing range of twenty-seven to thirty-three months.

The government urges a sentence at the low end of that range. Accordingly, the defendant will be sentenced to twenty-seven months of imprisonment. A fine is waived because of defendant's inability to pay.

IT IS ORDERED that the defendant will be sentenced in accordance with this memorandum opinion; a separate judgment of conviction will be entered in conformity with this memorandum opinion.